# Commonwealth *v*. Aiken, Appellant.

*School law—Compulsory attendance—Vaccination—Acts of June
18, 1895, P. L. 203, and May 18, 1911, P. L. 309—Statutes—Repeal.*

The Act of June 18, 1895, P. L. 203, relating to the vaccination
of school children is not repealed by the School Code of May 18,
1911, P. L. 309, and if a parent sends to a school an unvaccinated
child, and the child is refused admission on the ground that he is
not vaccinated, and the parent does not have the child vaccinated
and again offer him, he may be convicted of violating the compul-
sory attendance provisions of the School Code.

Argued May 2, 1916.   Appeal, No. 151, April T., 1916,
by defendant, from judgment of County Court of Alle-
gheny Co., No. 142 of 1916, sustaining judgment of jus-
tice of the peace in case of Commonwealth v. James H.
Aiken.   Before ORLADY, P.. J., HENDERSON, KEPHART,
TREXLER and WILLIAMS, JJ.   Affirmed.

Appeal from judgment of justice of the peace.

MILLER, J., filed the following opinion:

This is an appeal by the defendant from the judgment
of a justice of the peace in a proceeding instituted under
the Act of Assembly of May 18, 1911, P. L. 309, known
as The School Code, and particularly under Sections
1414 (page 383) and 1423 (page 386) of said act, provid-
ing for the compulsory education of the children of this
Commonwealth and the punishment of persons having
control of such children who fail to comply with the pro-
visions thereof.   Said Section 1414 is as follows:

"Every child having a legal residence in this Common-
wealth, as herein provided, between the ages of eight and

sixteen years, is required to attend a day school in which the common English branches provided for in this act are taught; and every parent, guardian, or other person in this Commonwealth, having control or charge of any child or children, between the ages of eight and sixteen years, is required to send such child or children to a day school in which the common English branches are taught; and such child or children attend such school continuously through the entire term, during which the public elementary schools in their respective districts shall be in session: Provided, That the certificate of any principal or teacher of a private school or of any institution for the education of children in which the common English branches are taught, setting forth that the work of said school is in compliance with the provisions of this act, shall be sufficient and satisfactory evidence thereof. Regular daily instruction in the English language, for the time herein required, by a properly qualified private tutor, shall be considered as complying with the provisions of this section, if such instruction is satisfactory to the proper county or district superintendent of schools."

And said Section 1423 is as follows:

"Every parent, guardian or person in parental relation in this Commonwealth, having control or charge of any child or children, between the ages of eight and sixteen years, who shall fail to comply with the provisions of this act regarding compulsory attendance, shall be guilty of misdemeanor, and on conviction thereof before any alderman, magistrate or justice of the peace, shall be sentenced to pay a fine, for the benefit of the school district in which such offending person resides, not exceeding two dollars ($2.00) for the first offense, and not exceeding five dollars ($5.00) for each succeeding offense, together with costs, and, default of the payment of such fine and costs by the person so offending, shall be sentenced to the county jail for a period not exceeding five days."

The case was heard de novo. The facts as developed

at the trial are as follows: The defendant is the father of, and has control and charge of a child, a girl between eight and sixteen years of age, living in the school district of the Borough of Ingram in this county and State; that the said child was not attending a day school where the common English branches were taught as provided in said act, and had not been attending such a school since September, 1915; that he did not produce a certificate of any principal or teacher of a private school, or of any institution for the education of children in which the common English branches are taught, setting forth that the work of said school is in compliance with the provisions of the above act; that there was no evidence that said child was or had been receiving instructions in the English language by a properly qualified private tutor, and that defendant received due notice of his failure to comply with said act. The defendant did not go upon the stand, neither did he offer any testimony in his defense. It appeared in the evidence on the part of the prosecution that after the child had attended the public school in said district for a period of eight days in September, 1915, she was sent home by the principal of said school and was refused admission by him because a certificate was not produced setting forth that she had been vaccinated or had previously had smallpox, and also that she presented herself to said school again on January 24, 1916, and was again refused admission by said principal for the same reason. It also appeared from the evidence that the board of school directors of said district had not excused said child from attending school on account of any mental, physical or other reasons.

The question for our determination upon the above stated facts is whether the defendant is guilty of a failure to comply with the provisions of said act regarding compulsory attendance and education of his child. The contention of the defendant is that he complied with said provisions of the act when he sent his child to the public

school, where she was refused admission by the principal on account of a failure to produce a physician's certificate of successful vaccination or of having previously had smallpox.

The principal of the school refused to admit the child in pursuance of Section 12, of the Act of Assembly of June 18, 1895, P. L. 207, which provides as follows:

"All principals or other persons in charge of schools as aforesaid are hereby required to refuse the admission of any child to the schools under their charge or supervision, except upon a certificate signed by a physician, setting forth that such child has been successfully vaccinated, or that it had previously had smallpox."

That the principal had a right to refuse to admit the child cannot now be questioned. Said act has not been passed upon by either of our appellate courts, however; a number of our lower courts have done so with approval: Nissley v. School Directors, 5 D. R. 732; Sprague v. Baldwin, et al., 18 Pa. C. C. R. 568.

The State, in the interest of society and for the preservation of government, has passed the compulsory educational laws for its children, which cannot be avoided or frustrated because the parents, or other custodians, of some of them may be opposed to vaccination. A person having charge or control of a child of school age in this State must send it to the public school, or other institution of learning where the required branches are taught, and there present a certificate of successful vaccination, or send it to a proper private school where no principal is in charge requiring such certificate, or give it proper instructions by a properly qualified tutor, or, upon failure to do any of these, subject himself to the punishment provided by said act. The question, as we view it, is not one of compulsory vaccination, but one of compulsory education: A person having charge of a child of school age, in normal health and physical condition, may escape the former, but cannot escape the latter. He may escape having his child vaccinated by sending

it to a proper private school, or have it instructed by a qualified private tutor.   It may be said that this is an invasion of his rights, and puts an additional burden and hardship upon him.   He has his choice, and if he does not believe in vaccination he must endure the additional burden.   The great importance of compulsory education cannot be overestimated, and the right of the legislature to pass such a law as provided in said Act of 1911, cannot be successfully questioned.   Neither can it be questioned that, in the interest of public health and for the purpose of preventing epidemics of smallpox, the legislature acted within its powers in passing said Act of June 18, 1895.   If one feels that these acts, construed either together or separately, invade his rights, yet, in the interest of society, he must submit to them. In this connection we quote from the opinion of the Supreme Court of the United States in the case of Jacobson v. Massachusetts, 197 U. S. 11, in which it was decided that the legislature of a state had a right to pass a compulsory vaccination law (page 26) :

"There are manifold restraints to which every person is necessarily subject for the common good.   On any other basis organized society could not exist with safety to its members.   Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy.   Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others.   This court has more than once recognized it as a fundamental principle that 'persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned.' ......
The possession and enjoyment of all rights are subject to

such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law."

It must be admitted that there has been some confusion in our State in the construction placed by its courts upon the former acts of assembly of this State relating to compulsory education, namely, the Acts of 1895, 1897 and 1901—the compulsory attendance features of which were somewhat similar to each other and are retained and enlarged in the present Act of 1911—when construed with said vaccination Act of 1895. We have not been referred by counsel to, nor have we found, any Supreme or Superior Court case in the State construing them, but there are several Common Pleas and Quarter Sessions Court cases which have done so : The said case of Sprague v. Baldwin, et al., 18 Pa. C. C. 568, holds that the compulsory education Act of 1895 and said vaccination act must be construed together so as to give effect to both, while the case of Commonwealth v. Smith, 9 D. R. 625, holds that the compulsory education Act of 1897 and said vaccination act cannot be construed so as to give effect to both, and so does the case of Commonwealth v. Bauman, 33 P. L. J. 109, as to the educational Act of 1901. The last two cases are based upon the ground that to construe the acts so that both would stand meant compulsory vaccination. This appears on page 627 in the Smith case as follows :

"In order to sustain this judgment, we must say that the defendant was obliged by the terms of the statute to procure, and his son to present, a certificate. We cannot say this."

And in the Bauman case, on page 110 :

"These acts are not in pari materia, and, even if they

were, there is nothing in them, either separately or read together, which can reasonably be construed to make the vaccination of school children compulsory."

We hold that said vaccination act and the compulsory educational feature of the School Code of 1911 should be construed so as to give effect to both, and this may be done, as stated above, not by necessarily compelling vaccination of the child, but by giving it private instructions.

We find a case very strongly supporting our position decided by the Court of Appeals of New York on June 2, 1914, People v. Ekerold, reported in 211 N. Y. 386, in which the statutes involved and the facts presented are very similar to those under consideration. In the syllabus of that case we find:

"The law requiring vaccination of children in the public schools is a proper one. When a father sends his child to school unvaccinated, and the school authorities refuse to allow said unvaccinated child to attend school, and the father refuses to permit vaccination and thereafter does not cause said child to attend on instruction as provided in the act, he is subject to the penalty provided."

The case seems to go to the extent of holding that vaccination may be compelled, but it also sustains its finding upon the ground that the defendant also had his choice of educating his child without incurring the condition of having it vaccinated. As to this feature of the case, we find on page 394 the following:

"There is still another reason why the defendant was not excused for disobedience of the law requiring him to see to the education of his child. The vaccination statute which we have been considering applies only to the public schools. It is well known that there are schools of other kinds and classes which might have been attended by the defendant's child where attendance would not have been subject to the condition which he now urges as an excuse for his failure to send his child to

school. It is answered in his behalf to this suggestion that that would entail expense. This might or might not be so, and even if it were it would not be sufficient to excuse the present position and situation of the defendant. We are made well aware at the present day that the government in the exercise of its police powers does impose many regulations which involve trouble and expense, and such trouble and expense have not been regarded as an excuse for noncompliance. If the defendant does not desire to take advantage of the public schools under the conditions prescribed for their operation, it very possibly may result that he will incur some additional trouble in the education of his children elsewhere. The choice of courses rests with him, and the burden of either will doubtless be fully compensated by the benefits to accrue from furnishing an education to his children."

Said case so fully and completely answers all the questions that have been raised in the case under consideration that we feel that we are justified in quoting liberally from it. (Page 391):

"It is obvious that a parent should not be allowed to escape his duty to send his children to school as provided by law on any excuse which is not an ample justification for such course. Our public school system has been developed with great pains and solicitude, and its maintenance and support have been recognized as so important for the welfare of the State that they have been provided for and safeguarded in the Constitution itself. As a part of this system, a statute has been passed requiring attendance at school of children within certain limits. If indifferent or selfish parents for ulterior purposes, such as the desire to place young children at labor instead of school, or from capricious or recalcitrant motives, may be allowed to manufacture easy excuses for not sending their children to school, a ready method will have been developed for evading the statute compelling such attendance, and if the statute which requires par-

ents to see to it that their children attend and take advantage of this school system may be lightly and easily evaded, the purposes of the State in providing and insisting on education will be frustrated and impaired. Failure to comply with the statute ought not to be excused except for some good reason.......But it is urged that while this law may properly be applied to those who, in the face of its provisions, elect to attend the public schools, still it is of such a character that its remedies ought not to be indirectly forced upon any unwilling person through the compulsory attendance provisions of the education law, and we are reminded of the familiar principle that a penal law should be strictly construed. Admitting all of the force which this principle justly has, there is another rule of construction which seems to me more potent in this case, and that is the one that statutes relating to the same general subject are to be construed in harmony with each other if possible.......We find that the legislature adopted the statute providing for compulsory attendance at school the very next year after it had passed the statute requiring vaccination of those attending the public schools, and it does not seem reasonable to assume that it was the legislative intention in passing both of these statutes relating to attendance at school to provide and have it come to pass that unwillingness to comply with the one requiring vaccination might be turned into a good excuse for disobeying the other one concerning attendance. It is hardly to be assumed that when the legislature passed the later statute there had slipped from its theoretical mind remembrance of the other law providing a very condition of attendance at public school, and if it had purposed that a child might be excused from attendance by reason of the unwillingness of its parent to have it vaccinated, I cannot but believe that something would have been said on that subject. It does not require much spirit of prophecy to foresee what will follow a contrary construction of the statutes. If a parent

may escape all obligation under the statute requiring
him to send his children to school by simply alleging that
he does not believe in vaccination, the policy of the State
to give some education to all children, if necessary by
compelling measures, will become more or less of a farce
under existing legislation."

Authorities of other states might be multiplied in sup-
port of our position, many of which have enacted laws,
sustained by their courts, making the vaccination of
children a condition of their right to enter or remain in
public schools: Jacobson v. Massachusetts, 197 U. S. 11,
supra.    See also Walker v. Cummings, 10 L. G. R. 728,
and Duffield v. School District, 162 Pa. 476.

And now, to wit, March 22, 1916, the above case hav-
ing been heard upon an appeal from a justice of the
peace, testimony taken and arguments of counsel heard,
after deliberation and due consideration, we find the de-
fendant guilty of the offense of failure to educate and
send his child to a school where the common English
branches are taught, contrary to the provisions of the
act of assembly, known as the school code, approved
May 18, 1911, P. L. 309.    The defendant is sentenced
to pay a fine of two dollars, with costs, and in default
of the payment thereof to undergo imprisonment in the
county jail for a period of two days.    It appearing, how-
ever, that a similar fine with costs was paid by the de-
fendant (under protest) to the justice of the peace, said
sentence is suspended.

*Error assigned* was the judgment of the court as above,
quoting it.

*F. R. Stoner,* for appellant.—The conviction cannot be
sustained: Duffield v. School District, 162 Pa. 484; Com.
v. Smith, 9 Pa. Dist. 625.

Substantially the question involved in this case was
decided by the court of Ohio in the State v. Turney, 31
Ohio C. C. 222.

Penal acts must be strictly construed: Com. v. Krickbaum, 199 Pa. 351; Com. v. Gouger, 21 Pa. Superior Ct. 217.

*J. M. Russell,* for appellee, cited: People of State of New York v. Ekerold, N. Y. Ct. of App. 211 N. Y. 386; Walker v. Cummings, 10 L. G. R. 728; Shappee v. Curtis, 142 App. Div. Supreme Ct. of New York 155.

OPINION BY ORLADY, P. J., July 18, 1916:

The opinion filed by Judge MILLER disposes of the question involved in this case in a very conclusive manner. It is of importance to consider the effect to be given to the Act of June 18, 1895, P. L. 207, in its relation to the School Code Act of May 18, 1911, P. L. 309. The 30th Section of the latter act provides, "This act of assembly is intended as an entire and complete school code for the public school system in this Commonwealth, hereby established in every school district therein, and the following acts or parts of acts, viz,—(enumerating over 200 acts or parts of acts), and concludes "together with any and all other acts of assembly, general, special or local, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof, shall, at the time of the taking effect of this act, be and the same are hereby repealed."

The Act of June 18, 1895, is not included in this list of repealed acts, and its omission is significant, from the fact that several cognate acts passed at the session of 1895 are included in the repealed list. This vaccination act, as it is called, was considered by the Supreme Court in Duffield v. Williamsport School District, 162 Pa. 476, in which it was held, that "School directors may, in the exercise of a sound discretion, exclude from the public schools pupils who have not been vaccinated." And again in Field v. Robinson, 198 Pa. 638, in which this Act of 1895, was held to be constitutional. On every theory of construction, these two acts must be considered as parts of

a system, and are so intimately related in their operation that they must be construed together: Commonwealth v. Gouger, 21 Pa. Superior Ct. 217; Commonwealth v. Mut., Etc., Brewing Co., 58 Pa. Superior Ct. 647, s. c. 252 Pa. 168, and Commonwealth v. Falk, 59 Pa. Superior Ct. 217. In the latter case the question of construction was presented, and we said, "The rules governing interpretation of such statutes has been recently reviewed, and it has been repeatedly stated that our only duty, and our only power in construing an act in reference to its constitutionality is to discover what, if any, provision of the Constitution it violates. The presumption is always in favor of the constitutionality of an act of assembly, and it cannot be declared void unless it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt and hesitation: Commonwealth v. Moir, 199 Pa. 534. The interpretation of a statute should be determined by the paramount purpose, rather than by the details through which that purpose is to be accomplished. The subject may have but one object, while the measure necessary for the attainment of that object may necessarily embrace many subordinate subjects, differing in their natural and particular effect, yet, all contributing to it, and comprising within the principal subject everything which the nature of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of its expressed purpose": Citing Commonwealth v. Jones, 4 Pa. Superior Ct. 362; Commonwealth v. Pflaum, 50 Pa. Superior Ct. 55.

In Lyndall v. High School Committee, 19 Pa. Superior Ct. 232, (1902), we held, that under the Act of 1895, school directors have the power to suspend a teacher because she refused to comply with a regulation of the board requiring teachers to be vaccinated. And with reference to the same act the Supreme Court in Stull v. Reber, 215 Pa. 156, said, "The Act of June 18, 1895, is not a penal statute, and is not to be construed or administered by the rigid technical rule applicable to penal

laws, but fairly, according to its intent, neither narrowing it to the letter, to the exclusion of cases clearly within such intent, nor stretching it beyond its legitimate scope to cover matters not clearly meant to be included. It is an act touching very closely common rights and privileges, and therefore specially requiring a common sense administration." See also Commonwealth, ex rel., v. Rowe, 218 Pa. 168.

The Act of June 18, 1895, is still in force, and, so far as our search has disclosed, the necessity for the enforcement of such legislation is recognized in every state of the Union where the subject has been considered by the appellate courts.

The judgment is affirmed.