# Commonwealth *v.* Gillen, Appellant.

*School law—Compulsory attendance—Vaccination—Acts of June 18, 1895, P. L. 203, and May 18, 1911, P. L. 309—Statutes—Repeal.*

A father who refuses or neglects to have his children vaccinated as required by the Act of June 18, 1895, P. L. 203, so that they are refused admission to a school, is subject to the penalties provided in the School Code of May 18, 1911, P. L. 209, relating to the compulsory attendance of children at school. The Act of June 18, 1895, P. L. 203, is not repealed by the Act of May 18, 1911, P. L. 309.

Argued Oct. 4, 1916.   Appeal, No. 133, Oct. T., 1916, by defendant, from judgment of Q. S. Philadelphia Co., March Sessions, 1916, No. 167, sustaining judgment of magistrate in case of Commonwealth v. William Gillen. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Appeal from judgment of magistrate.   See 25 Dist. Rep. 401.

The opinion of the Superior Court states the case.

*Error assigned* was in sustaining judgment of magistrate.

*Edwin M. Abbott,* for appellant, cited: Compulsory attendance v. Vaccination, 32 Pa. C. C. R. 508; Com. v. Smith, 9 Dist. Rep. 625; Field v. Robinson, 198 Pa. 638; Gerhard v. Packer Twp. School Dist., 24 Pa. C. C. R. 339; Cousins v. Borgie, 13 D. R. 368; Nissley v. Hummelstown Borough School Directors, 18 Pa. C. C. R. 481; Sprague v. Baldwin, 18 Pa. C. C. R. 568.

*Joseph H. Taulane,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY ORLADY, P. J., November 2, 1916:

The undisputed facts of this case are as follows: The defendant, a resident of Philadelphia, is the father of two children, aged respectively nine and ten years, who were not attending school or under instruction as required by the Act of May 18, 1911, P. L. 309, known as the compulsory school law. He was notified by the proper school authorities, to have his children attend school, but being opposed to the vaccination of his children as is required by the Act of June 18, 1895, he refused to comply with the notice. He was found guilty before a magistrate of a violation of Section 1423, of the Act of 1911, and sentenced to pay a fine of two dollars, and costs; from which judgment an appeal was taken to the Court of Quarter Sessions, and after a hearing the conviction was upheld, and an appeal taken to this court.

The Act of May 18, 1911, P. L. 309, is entitled "An Act, to establish a public school system in the Commonwealth of Pennsylvania, together with the provisions by which it shall be administered, and prescribing penalties for the violation thereof;...... and repealing all laws general, special or local, or any parts thereof, that are or may be inconsistent therewith." It contains 2,824 sections, and its purpose is declared in the repealing clause, as follows: "This act of assembly is intended as an entire and complete school code for the public school system in this Commonwealth, hereby established in every school district therein, and the following acts and parts of acts to wit:" (here follow over 200 acts, and parts of acts, general, special and local, specifically mentioned as being repealed), and concludes, "together with any and all other acts of assembly, general, special or local, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof, shall, at the time of the taking effect of this act, be and the same are hereby repealed."

Section 1414, provides,—"Every child having a legal residence in this Commonwealth, as herein provided, be-

31, (1916).]          Opinion of the Court.

tween the ages of eight and sixteen years, is required to attend a day school in which the common English branches provided for in this act are taught; and every parent, guardian, or other person, in this Commonwealth having control or charge of any child or children, between the ages of eight and sixteen years, is required to send such child or children to a day school in which the common English branches are taught; and such child or children shall attend such school continuously through the entire term, during which the public elementary schools in their respective districts shall be in session."

Section 1423, provides, that a parent failing to comply with the provisions of the act shall be guilty of a misdemeanor, and on conviction be sentenced to pay a fine for the benefit of the school district, not exceeding two dollars, etc.

Section 1510, of the act is as follows: "Any pupil prevented from attending school on account of the health or sanitation laws of this Commonwealth, or by the sanitary regulations of the local board of health or the board of school directors, is hereby relieved from complying with the provisions of this act concerning compulsory attendance, during such time as he is thereby prevented from attending school."

The Act of June 18, 1895, P. L. 203, entitled, "An Act to provide for the more effectual protection of the public health in the several municipalities of this Commonwealth," and by its twelfth section provides, "All principals or other persons in charge of schools as aforesaid, are hereby required to refuse the admission of any child to the school under their charge or supervision, except upon a certificate signed by a physician, setting forth that such child has been successfully vaccinated, or that it has previously had smallpox." This act is not mentioned in the list of repealed acts, or parts of acts, in the Act of 1911, and in so far as it relates to the same subject-matter, it must be read into and construed with the latter act as a relevant constituent of the school law.

This code is the result of many years of practical experience, and its beneficent provisions should be rigorously enforced, as it is the last expression of the legislative will on this subject.

The Act of May 16, 1895, P. L. 75, is the first declaration or our statute books of a compulsory education law; and all its provisions are incorporated in the Act of 1911. The omission of the Act of June 18, 1895, from the list of repealed acts has special significance, when we consider that nine separate acts approved in that session of the legislature relating to schools and libraries, are specially repealed.

The Act of June 18, 1895, P. L. 203, was fully considered in Stull v. Reber, 215 Pa. 156, in which it is held that, "The act is in no proper sense a regulation of school districts......What bearing it has on schools and school districts is altogether incidental to them as constituents of the community......At present the vast preponderance of opinion among intelligent and educated people, under the guidance of the best medical authority, is that vaccination is a highly useful ameliorative, if not always a preventive of one of the greatest scourges that have in past times afflicted humanity, and that the regulation of it by statute is not only a justifiable but a wise and beneficent exertion of the police power over the public health......The act is not a penal statute. It is a broad general act relating to the health of the whole population of the Commonwealth. It is not, therefore, to be construed or administered by the rigid technical rules applicable to penal laws, but fairly, according to its intent, neither narrowing it to the letter to the exclusion of cases clearly within such intent, nor stretching it beyond its legitimate scope to cover matters not clearly meant to be included. It is an act touching very closely common rights and privileges and therefore specially requiring a common-sense administration."

We had the question before us in Commonwealth v.

Aiken, 64 Pa. Superior Ct. 96. See People v. Eckerold, 211 N. Y. 386; Jacobson v. Mass., 197 U. S. 11.

The Act of 1911 provides for compulsory education of children at school, and exemptions from such attendance are allowed, by Section 1413, for blind, deaf or mentally deficient children; by Section 1415, for children on account of mental, physical or other urgent reasons; by Section 1416, for children regularly employed in useful and lawful employment or services during the time the public schools are in session; but to sanction the invasion of the requirements of this law by permitting a parent to fix a standard of health qualification, of the pupil, would be to take from the school board the direct power granted by the act, and transfer such power to the individual, which would be the destruction of the system. A parent might, with as much reason, claim that a disease recognized by health authorities as contagious or infectious, was not so in fact, and set up his personal judgment against that of the health authorities.

The affirmative declaration in a statute is not to be rendered inoperative by a strained interpretation of a provision in another act. If possible both are to be considered together as parts of our general law, and where the legislature provides a special code for the administration of an important branch of our government, full force and effect is to be given to its provisions unless directly repugnant to a clearly defined provision in another statute.

The exceptions mentioned in Section 1510 (above quoted), refer only to temporary or emergent conditions "during such time as he is thereby prevented from attending school on account of health or sanitation laws, or regulation of the local board of health or board of school directors," and cannot refer to such a condition as is urged by this appellant, to fix a permanent exemption from such attendance, on account of the individual opinion of the parent in regard to his propriety of complying with a health regulation.

See also People v. Board of Education, 234 Ill. 422, L. R. A., New Series, 109, and notes; Bissell v. Davidson, 65 Com. 183, 29 L. R. A. 281.

The right of school boards to exclude unvaccinated children from the public schools, and of school and health boards to enforce vaccination, has been the subject of frequent legislative enactment.

The power to make and enforce all needful rules and regulations,......"to enforce vaccination" is directly given to the board of health in boroughs, by the Act of May 11, 1893, P. L. 44; in cities of the third class, by the Act of May 23, 1889, P. L. 306; in cities of the second class by the Act of June 26, 1895, P. L. 350; in cities of the first class, by the Act of April 20, 1905, P. L. 228; in townships of the first class, by the Act of May 29, 1907, P. L. 302; and generally, by the act "to safeguard human life and health," by the Act of May 14, 1909, P. L. 855, by which children affected with small-pox (variola, varioloid), may be quarantined and excluded from all schools.

These acts have had judicial construction in many cases in our own and sister states, and it has been in every instance declared, that vaccination is endorsed by practically the unanimous opinion of practicing physicians; by the concordant judgment of federal, state and municipal health officials; by governmental commissions, and by affirmative action of practically all civilized countries; it has been found to be desirable and necessary to make vaccination compulsory in the armies, navies, and immigrant stations of the world, and in most instances obligatory in one form or another for the general civil population.

It must be conceded by all right thinking persons, that the enforcement of the compulsory school code is a matter of paramount importance, to which the views of the individual view must yield, and this must be so, whether such view is based on a prejudice against a legislative requirement, or even a conscientious difference of opinion

as to a health regulation. We have nothing to do with the wisdom or propriety of such an enactment, but when it is clearly declared, it is the duty of the courts to enforce it.

In Duffield v. Williamsport School District, 162 Pa. 476, a mandamus to compel a school board to admit an unvaccinated pupil was refused, in which case it is said, by WILLIAMS, J., "It would not be doubted that the directors would have the right to close the schools temporarily during the prevalence of any serious disease of an infectious or contagious character. This would be a refusal of admission of all the children of a district. They might limit the exclusion to children from infected neighborhoods, or families in which one or more of the members was suffering from the disease. For the same reason they may exclude such children as decline to comply with requirements looking to prevention of the spread of contagion, provided such requirements are not positively unreasonable in their character. The municipal regulations of many, and I have no doubt most, of the cities of this State and country provide for it. In the present state of medical knowledge and public opinion upon this subject, it would be impossible for a court to deny that there is reason for believing in the importance of vaccination as a means of protection from the scourge of smallpox."

In Field v. Robinson, 198 Pa. 638, the Act of June 18, 1895, P. L. 203, was held to be constitutional, and that a principal of a public school in the exercise of a sound discretion may exclude pupils who have not been vaccinated. This was followed by Stull v. Reber, 215 Pa. 156, (above quoted), which has been frequently referred to, and the rule therein announced followed.

Where the act is not penal, but beneficial and remedial, it calls for a liberal construction and is to be so construed as to give effect to the legislative intent. There is no impropriety in putting a literal construction on a remedial clause in the same act: Commonwealth v. Shaleen, 215 Pa. 595.

In Lee v. Marsh, 230 Pa. 351, the form of certificate demanded by the health authorities, under the Act of April 20, 1905, 228, to entitle a child to admission into the schools as having been successfully vaccinated, is defined, so as to prevent ambiguity, and its use held to be obligatory.

The suggested obscurity in the notice, in this case, is not material in the light of the admission of counsel that "the board of education, through its representative, did what they were required to do, and we admit that by doing that we were prevented from sending the children to school, they not having been successfully vaccinated or of having had smallpox."

It is an accepted fact, that during the common school ages, children are specially susceptible to the infectious and contagious diseases mentioned in these acts, and that this hazard is greatly increased by their being brought together from our varied conditions of society. To avoid the spread of these diseases, it has been deemed necessary by the legislature to enforce rigid quarantine and preventive measures, even to the isolation of persons, and exclusion of pupils from infected districts. Enforced vaccination has the approval of frequent and peremptory legislative directions, so that schools, churches and places of public amusement are closed by health boards in emergent and epidemic conditions, and it is but a reasonable exercise of the police power of the Commonwealth to assure protection to all the children, all the time, as well as during the prevalence of an epidemic. Individual objection to the requirements of the law must give way to the necessity for protection of the public health.

Under the facts as presented by this record, the action of the school board was in strict conformity with the law, and the defense interposed by the defendant cannot, under our decisions, justify his refusal to comply with the law.

The judgment is affirmed.