## Marsh's Case.

Argued March 11, 1940. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*H. Eugene Gardner,* with him *Harold R. Prowell* and *Ralph A. Sheetz,* for appellant.

*Ray T. Harrigan,* District Attorney, for appellee.

OPINION BY STADTFELD, J., June 25, 1940:

On October 17, 1938, a petition was filed in the Court of Quarter Sessions of Cumberland County, sitting as

a Juvenile Court, for the production of Eugene Marsh on a charge of being a delinquent and neglected child.

At the hearing upon the petition, the evidence established the following facts: Eugene Marsh, son of Mr. and Mrs. John Marsh of South Middleton Township, was born October 22, 1929. He was a child of good health and compulsory school age [1] during the school years of 1937-38 and 1938-39. Nevertheless, he failed to attend school in the district during the term of the 1937-38 school year. On the first day of the following school year, September 6, 1938, Eugene presented himself for admission to the free, public school in the district. He was refused admission and sent home because of his failure to produce a physician's certificate setting forth that he had been successfully vaccinated or had previously had smallpox. Thereafter, having been sent to school by his father, Eugene presented himself almost daily for admission, but each time he was rejected and sent home for the same reason. His exclusion from school continued from September 6, 1938 to October 17, 1938, when the petition for his production was filed by Albert J. Warren, the attendance officer for the school district. Eugene did not attend school subsequent to filing of the petition.

During the school year 1937-38, John Marsh had, on several occasions, been convicted and imprisoned for violations of the compulsory attendance provisions of the School Code of May 18, 1911, P. L. 309, as amended by the Act of 1937, supra, (footnote).

At the hearing in the present proceeding, John Marsh stated his opposition to subjecting his son, Eugene, to vaccination. He also admitted that during the two

---

[1] The term "compulsory school age" means the period of a child's life from the time the child's parents elect to have it enter school which shall not be later than the age of eight, until the age of seventeen years: Act of July 1, 1937, P. L. 2560, §4 (24 PS §1421).

school years in question, he had not enrolled Eugene in a properly certified private school nor furnished him with a properly qualified private tutor. In fact, no evidence was given that the child was provided with any regular or systematic instruction. Following the hearing and argument on the questions of law involved, the court below, by REESE, P. J., filed an opinion and order adjudging Eugene Marsh, age nine years, a neglected child and committed him until further order of the court into the care and custody of the Cumberland County Child Welfare Services, subject to the supervision of the probation officer. This appeal followed.

The constitutionality of the Act of June 18, 1895, P. L. 203, amended by the Act of June 5, 1919, P. L. 399, (53 PS §2181), relating to the vaccination of school children has been sustained by our Supreme Court: *Com. ex rel. Shaffer v. Wilkins et al.,* 271 Pa. 523, 115 A. 887. That case approved the decisions of this court holding that a parent who refuses or neglects to have his child vaccinated as required by the Act of 1895 so that it is refused admission to a school, is subject to the penalties provided in the School Code of May 18, 1911, supra, relating to the compulsory attendance of children at school. See *Com. v. Aiken,* 64 Pa. Superior Ct. 96; *Com. v. Gillen,* 65 Pa. Superior Ct. 31; *Com. v. Butler,* 76 Pa. Superior Ct. 113. These Acts have also been upheld as a valid exercise of the police power of this Commonwealth in *Marsh v. Earle et al.,* 24 F. Supp. 385. The construction and application of these Acts have not, in this respect, been affected by the amendatory Act of 1937, supra, to the School Code of 1911.

In the present proceedings, we are not concerned with the several convictions of John Marsh for violation of the compulsory attendance provisions of the School Code. Although these convictions may have subjected the father to some hardship and suffering, they have failed to alter the situation for the benefit of the child who has been continuously deprived of the opportuni-

ties of education provided for him by the Commonwealth. The real issue before this court now, is a narrow one. The question is simply whether John Marsh's son, Eugene, is a "delinquent" and "neglected" child within the meaning of the act of June 2, 1933, P. L. 1433, §1, (11 PS §243), known as the Juvenile Court Law.

This Act includes within its definitions of a "delinquent child" the following: "A child who is habitually truant from school or home." Within the definitions of a "neglected child" is included, "A child whose parent, guardian, custodian or legal representative neglects or refuses to provide proper or necessary subsistence, *education,* medical or surgical care, or other care necessary for his or her health, morals or well being." (Italics supplied).

It appears from the evidence as disclosed in the record that John Marsh did instruct his son to go to school and that the child did so. He was refused admission by the school authorities acting under a statutory duty. The responsibility for continued absence from attendance cannot properly be imputed to the child, and for this reason the child cannot reasonably be adjudged "delinquent".

It was the refusal and neglect of John Marsh to have his son vaccinated in accordance with the lawful requirements of the Acts of 1895 and 1919 that prevented the latter's attendance at the public school. Appellant admits his opposition to the vaccination of his child, but seeks to justify his unwillingness on the ground that the practice of vaccination is harmful and injurious. Two expert witnesses were called on behalf of the appellant and their testimony was elicited with a view to supporting this contention.

These experts testified that vaccination had no real value and had nothing to do with the eradication of smallpox. They also claimed that vaccination is often responsible for appendicitis, syphilis, sleeping sickness,

476

infantile paralysis, tetanus and other harmful results and in many cases, death.

On the other hand, the Director of the Bureau of Health and Sanitation of the Department of Health of the Commonwealth of Pennsylvania, testified that vaccination is very definitely effective and does prevent smallpox. His testimony contradicted that of appellant's expert witnesses in attributing harmful diseases to the practice of vaccination.

In speaking of evidence similar to that given in the instant case in opposition to vaccination, but rejected when offered in proof, the Supreme Court of the United States, in *Jacobson v. Massachusetts*, 197 U. S. 11, 30, 25 S. Ct. 358, stated: "Those offers in the main seem to have had no purpose except to state the general theory of those of the medical profession who attach little or no value to vaccination as a means of preventing the spread of smallpox or who think that vaccination causes other diseases of the body. What everybody knows the court must know, and therefore the state court judicially knew, as this court knows, that an opposite theory accords with the common belief and is maintained by high medical authority."

In *Com. v. Gillen*, supra, 36, this court in an opinion by ORLADY, P. J. stated: "...... vaccination is endorsed by practically the unanimous opinion of practicing physicians; by the concordant judgment of federal, state and municipal health officials; by governmental commissions, and by affirmative action of practically all civilized countries; it has been found desirable and necessary to make vaccination compulsory in the armies, navies, and immigrant stations of the world, and in most instances obligatory in one form or another for the general civil population.

"It must be conceded by all right thinking persons, that the enforcement of the compulsory school code is a matter of paramount importance, to which the views

of the individual must yield, and this must be so, whether such view is based on a prejudice against a legislative requirement, or even a conscientious difference of opinion as to a health regulation. We have nothing to do with the wisdom or propriety of such an enactment, but when it is clearly declared, it is the duty of the courts to enforce it."

The record contains no evidence indicating that Eugene Marsh is particularly unfit for vaccination or that vaccination, properly performed, is likely to result in harmful and injurious effects to him.

The issue presented in the instant case is not, however, one of compulsory vaccination, but one of compulsory education. The appellant, John Marsh, had no option to exercise in the matter of granting or refusing proper education to his child, who was of school age and in normal physical and mental condition. Eugene Marsh is entitled to the benefit of proper education. Of this benefit, his father cannot, under the circumstances of this case, deprive him. The only choice the appellant had in this matter was that of permitting his son to be vaccinated and thereby qualified for admission to a public, private or parochial school, or, in the alternative, providing other adequate and systematic instruction, as, for example, under a properly qualified private tutor and thus avoid the requirement of vaccination. Having failed to do either, appellant must be deemed to have neglected or refused to provide proper or necessary education for his son. Appellant's contention that the child was "sent" to school, cannot, by any strain of language be construed to be a compliance with the provisions of the law. His refusal to have the child vaccinated was as effective a restraint upon the latter's attendance at school as the application of any physical force. The conclusion necessarily follows that Eugene Marsh must be adjudged a "neglected child" within the meaning of the Juvenile Court Law, and the court below, sitting as a Juvenile

Court, having full, exclusive jurisdiction in all proceedings affecting delinquent, neglected and dependent children, has, in our opinion, properly adjudged Eugene Marsh to be a neglected child and ordered him committed into the care and custody of the Cumberland County Welfare Services.

The order of the court below is affirmed.