OPINION OF THE COURT
Raymond E. Cornelius, J.
The respondent is charged with being a person in need of supervision under article 7 of the Family Court Act by a petition filed by the petitioner mother of the respondent. The petition alleges that the respondent "is incorrigible, habitually disobedient and beyond the lawful control of her parents”, and specifically, the respondent left her mother’s home on September 12, 1977 without parental permission, and, with the exception of several days, has refused to return home.
As a result of a hearing held in this matter, the court finds that the respondent did leave her mother’s home shortly after *346 her 11th birthday, which occurred on September 10, 1977 and, with the exception of several days, has refused to return home although requested to do so by her mother. During this period of time, the respondent has lived with her maternal grandparents, who reside on the same street and a short distance from the petitioner mother. In fact, the respondent’s 13-year-old sister is living with the same grandparents without parental permission, and the respondent has stayed with the grandparents off and on during her lifetime, including a period of time shortly after her birth when she was cared for by the grandmother with the petitioner mother’s permission.
Based upon the testimony, the court finds that the respondent left the mother’s home and has refused to return home for two reasons. First, the conditions in the petitioner mother’s home are far from ideal, and are offensive to the respondent. The petitioner receives public assistance and, because of her large family, economizes by preparing a large portion of food for a given meal and then serving this same food each day until finished. During this time, the animals maintained as pets by the petitioner, including two dogs and five cats, may have contact with the food. Also, these animals leave excretions within the house and, although cleaned up by the children, an odor remains in the household. There is also evidence that the petitioner disciplined the respondent by means of a stick, or other implement, which leaves marks upon the child. In addition, the petitioner, on occasion, uses loud and obscene language. In sharp contrast, the home of the maternal grandparents is serene and provides the respondent with the economic benefits which her mother cannot afford. The grandparents take a keen interest in the respondent’s progress in school, and involve her in various activities, including Girl Scouts.
The second, and more significant, reason for respondent’s failure to return home may be attributed to a very intense and hostile relationship between the petitioner and the maternal grandparents. The grandparents are extremely critical of petitioner’s life style, her past relationship with men and, most important, the manner in which she has raised her family. On occasion, they have usurped some decision with respect to the respondent, which might otherwise be the prerogative of the mother, such as the purchase of clothing and the cutting of hair. At present, there is virtually no relationship between the petitioner and the maternal grand *347 parents, and when there has been contact in the past, frequent arguments occur, with the use of obscene language. It is within this context, and under the influence of the maternal grandparents, that the court finds the respondent has declined to return home.
Except as set forth above, the respondent is a well-behaved, neat appearing, polite, and otherwise obedient 11-year-old child. When living with her mother, the respondent was given many responsibilities and duties to perform and, although she believed that too much was required of her, the respondent complied with her mother’s request. In addition, the respondent is given responsibilities in her grandparents’ home and complies with their directives. The respondent attends school on a regular basis, and is well liked by her teachers and the other students.
There is no proof before the court which would justify a conclusion that the respondent is incorrigible. Therefore, the question becomes whether or not the respondent is "habitually disobedient and beyond the lawful control of (her) parent” by continuously refusing to comply with her mother’s request to return home. On first impression, the facts of this case would appear to come within the technical definition of a person in need of supervision, as defined in section 712 of the Family Court Act.
There is a paucity of case law involving factual situations similar to the present case, involving children who leave and decline to return home, but do not fall within the common concept of a runaway. In the case of Matter of Reynaldo R. (73 Misc 2d 390), a 14-year-old child moved to a furnished room near his parents’ home, obtained employment, and informed his parents of his whereabouts. The respondent in that case testified that he left home because his parents locked him in his room all day. The court held that the totality of facts negated the conclusion that the respondent was a person in need of supervision. The petition in that case alleged that the respondent had "absconded” from home, and the court interpreted "absconded”, which is not contained in the definition of a person in need of supervision, as requiring a clandestine withdrawal and concealment of oneself. Unlike the instant case, however, the evidence indicated that the 14-year-old child was willing to return home, and had visited the parents.
In another decision, a Family Court indicated that a petition, alleging that someone was in need of supervision, *348 would be well founded if a legal compulsion and/or sanction existed by virtue of which the respondent was to live with the petitioner, but refused to do do. (Matter of Morris W., 79 Misc 2d 567.) In that case, the respondent had left the grandmother’s home, where placement had been made as a result of a neglect proceeding, and returned to the mother and stepfather’s home, from whom he had been removed. However, the court dismissed the petition because the order of placement had expired at the time the respondent had left the grandmother’s home, and the court declined to extend placement by a nunc pro tunc order to validate the PINS petition.
Based upon all of the facts and circumstances of the instant case, this court has concluded that the respondent has not been proved, beyond a reasonable doubt, to be a person "habitually disobedient” and "beyond the lawful control” of her mother, and therefore, dismisses the petition charging the respondent with being a person in need of supervision. In reaching this decision, the court has been guided by a previous decision made by a Family Court in New York State, and also, the history and purpose of the status offender law in New York.
In Ossant v Millard (72 Misc 2d 384) the court had before it the other branch of the PINS or status offender section of the Family Court Act, namely, that part dealing with a child who violates the State Education Law by failure to attend school. The parents refused to permit the child to attend school as a result of a dispute with the school board concerning transportation. The court found (p 389) that the children were, in effect, caught up as "pawns between the control of their parents and the authority of the school”. In rendering his decision, Judge Smith observed that the Family Court Act permits sanctions which may seriously affect the liberties of a child upon a finding that the child is a person in need of supervision and, therefore, held that (p 388) the "respondent * * * must be found to have a conscious underlying intent (animo remanendi) to violate the clear provisions” of the Education Law. In other words, the child must have been absent from school by virtue of his own will and personal intent.
Indeed, the law does permit sanctions which might affect the liberties of the respondent in this case, which might involve placement outside of the community, if she were to be found a person in need of supervision. In addition, the courts *349 have applied the same kinds of constitutional standards to PINS cases as to juvenile delinquency cases, as in the case, for example, of the requirement that a PINS case requires the constitutional standard of proof beyond a reasonable doubt, in the Matter of Iris R. (33 NY2d 987). Historically, status offenders or persons in need of supervision were treated as delinquents until a distinction was made by the State Legislature by enactment of the Family Court Act in 1962, as part of the over-all court reorganization. It would appear that the major reason for making this distinction was the stigma, which was believed to have attached to the term "delinquent”. (Joint Legis Committee on Court Reorganization, Family Ct Act, Report No. 2, p 6.) Today, of course, there is a debate throughout the country concerning whether or not status offenders should be subject to legal sanctions for conduct which would not constitute a crime if the alleged status offender were an adult. This debate has been generated, in part, by the proposed Juvenile Justice Standards, which are the product of the Juvenile Justice Standards Project, sponsored jointly by the Institute of Juvenile Administration and the American Bar Association. These standards recommend that the PINS jurisdiction be removed from the court system.
Although thre is a lack of precedent, this court concludes that the element of conscious intent, as applied in the truancy situation (Ossant v Millard, 72 Misc 2d 384, supra), should also be required as part of the proof for the other branch of the PINS definition, namely, where the respondent is alleged to be habitually disobedient, etc. Based upon what has already been found in the instant case concerning the conditions present in the petitioner mother’s home, which respondent feels justified her in leaving, together with the influence of the grandparents, there is a reasonable doubt whether or not the respondent had a conscious intent to violate the law and to be habitually disobedient to her mother.
It is quite apparent that the real purpose in bringing this proceeding is to obtain custody of the respondent. However, under the circumstances of this case, a more appropriate remedy may be by habeas corpus. (Family Ct Act, § 651.) Although the home conditions of the petitioner mother are far from ideal, there is insufficient evidence to indicate that the respondent’s "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired” and, therefore, a neglected child as defined in section *350 1012 of the Family Court Act. Accordingly, the court declines to exercise its option to direct the filing of a neglect petition pursuant to section 716 of the Family Court Act.