382 N.W.2d 381 (1986)
In the Interest of C.S.
James TWOMEY, Petitioner and Appellee,
v.
F.S., G.S., and C.S., Respondents and Appellants.
In the Interest of A.S.
James TWOMEY, Petitioner and Appellee,
v.
F.S., G.S., and A.S., Respondents and Appellants.
Civ. Nos. 10944, 10945.
Supreme Court of North Dakota.
February 20, 1986.
*382 James F. Twomey, Asst. State's Atty., Fargo, for petitioner and appellee.
Richardson, Blaisdell, Isakson & Lange, Hazen, for respondents and appellants; argued by Gregory L. Lange.
ERICKSTAD, Justice.
C.S. and A.S.,[1] and their parents, appeal from a juvenile court order finding each child to be an "unruly child" because of habitual truancy. We reverse.
At the time of the hearing in this matter, C.S. was nine years old and A.S. was ten years old. The children attended Mapleton Elementary School until January 14, 1985, when C.S. was in the fourth grade and A.S. was in the fifth grade. The children did not return to school after January 14, 1985, but were thereafter educated at home by their mother and father, neither of whom is a certified teacher. The parents removed the children from the public school because they believed that the children's educational abilities were not being fully realized within the public school structure and because they preferred that the children be taught with Christian-oriented educational materials. The State concedes that the children were absent from public school at the express direction of their parents.
On February 4, 1985, separate petitions were filed by the Assistant State's Attorney for Cass County alleging that C.S. and A.S. were "unruly" due to habitual truancy. The cases were consolidated for hearing before the juvenile court. The court issued its findings of fact, conclusions of *383 law, and order finding that the children had been habitually and without justification truant from school and therefore came within the court's jurisdiction as "unruly" children. The court ordered that the children be placed on unsupervised probation for one year and that they resume attending the Mapleton Elementary School. The children and their parents have appealed from that order.
The sole question presented on appeal is whether these children may be found to be unruly because their parents refuse to allow them to attend school. Resolution of this issue requires an analysis of the relevant provisions of the compulsory attendance statute and the juvenile court act.
Section 15-34.1-01, N.D.C.C., provides:

"15-34.1-01. Compulsory attendance. Every parent, guardian, or other person who resides within any school district, or who resides upon any government base or installation without any school district, and has control over any educable child of an age of seven years to sixteen years who does not fall under the provisions of sections 15-34.1-02 or 15-34.1-03, shall send or take such child to a public school each year during the entire time such school is in session."
Section 15-34.1-03, N.D.C.C., provides that compliance by a parent with Section 15-34.1-01 is excused if (1) the child is attending an approved parochial or private school, (2) the child has completed high school, (3) the child is necessary to the support of his family, or (4) the child's physical or mental condition renders attendance impracticable.
Section 27-20-02(10), N.D.C.C., defines "unruly child":
"10. `Unruly child' means a child who:
"a. Is habitually and without justification truant from school;
"b. Is habitually disobedient of the reasonable and lawful commands of his parent, guardian, or other custodian and is ungovernable; or who is willfully in a situation dangerous or injurious to the health, safety, or morals of himself or others;
"c. Has committed an offense applicable only to a child; or
"d. Has committed a noncriminal traffic offense without ever having been issued an operator's license or permit if one was required; and
"e. In any of the foregoing instances is in need of treatment or rehabilitation."
Subsections (3), (4), and (5) of Section 27-20-02, N.D.C.C., also define two other categories which fall within the jurisdiction of the juvenile court: a "delinquent child," meaning a child who has committed a crime, other than an offense applicable only to a child or a traffic offense, and a "deprived child," meaning a child who is without proper parental care.
In construing these provisions, we are guided by several well-settled rules of statutory construction. The primary purpose of statutory construction is to ascertain the intent of the Legislature. Puklich & Swift, P.C. v. State, 359 N.W.2d 846, 849 (N.D.1984). The Legislature's intent in enacting a statute must first be sought from the language of the statute itself. Puklich & Swift, supra, 359 N.W.2d at 849. A statute must be considered as a whole to determine the intent of the Legislature. County of Stutsman v. State Historical Society, 371 N.W.2d 321, 325 (N.D.1985). A statute is to be read to give effect to each of its provisions, County of Stutsman, supra, 371 N.W.2d at 325, and conflicting pari materia provisions are to be reconciled, if possible. Puklich & Swift, supra, 359 N.W.2d at 849.
Looking at the clear language of Section 27-20-02, and reading the various provisions of the statute as a whole, we note that the Legislature has adopted three categories within the juvenile court act: "unruly child" and "delinquent child," which focus upon the conduct of the child, and "deprived child," which focuses upon the conduct of the parent. Intentional noncompliance with the compulsory attendance law, as in this case, is a violation by the parent, not the child. It is the conduct of *384 the parent, and not the child, which has created the problem here.
Chapter 27-20, N.D.C.C., is derived from the Uniform Juvenile Court Act. The Commissioners' Note to § 2 of the Uniform Act [our § 27-20-02, N.D.C.C.] provides further support for the conclusion that the unruly child provision focuses upon the conduct of the child:
"The `unruly child' category is needed to limit the disposition that can be made of a child who is in need of treatment or rehabilitation, but who has committed no offense applicable to adults. The `unruly child' is usually unmanageable and in need of supervision but not to the extent that he should be institutionalized with delinquent children."
The State in the instant case has made no showing that the children involved here are in any sense "unmanageable," or that they are in need of supervision beyond the mere fact that they are not attending public school. It is clear that the children are not in attendance because of their parents' will, not their own will.
Perhaps the clearest expression of the Legislature's intent in this area is the definition of "deprived child" found in Section 27-20-02(5)(a):
"5. `Deprived child' means a child who:
"a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian...." [Emphasis added.]
This subsection clearly provides for juvenile court intervention when, through conduct of the parents, the child is not being properly educated. If we were to interpret Section 27-20-02(10) to permit a child to be found unruly when absent at the direction of the parents, as the State urges in this case, we would render the above-quoted deprivation provision duplicative, in violation of our rule of construction requiring that every part of the statute be given full effect. By defining deprivation in part as failure of the parent to provide an education as required by law, the Legislature has evinced an intent that absence from school caused by parental conduct is to be handled under the deprivation provisions, and that a child may be found unruly based upon truancy only if he is habitually absent from school in defiance of parental authority.
Further support for this interpretation of the plain language of the statute is found in the legislative history to the 1971 amendment to Section 27-20-02, N.D.C.C. Prior to the amendment, "unruly child" was defined as "a child who while subject to compulsory school attendance is habitually and without justification truant from school." The 1971 amendment deleted the phrase, "while subject to compulsory school attendance." In testimony before the Senate Social Welfare and Veterans Affairs Committee, Representative Eagles, the sponsor of the bill, testified that the compulsory attendance law applied only to the parent, and not the child. Therefore, it should not be necessary to show a violation of the compulsory attendance law as a prerequisite to finding that a child is habitually truant without justification and, consequently, "unruly." Although the legislative history is somewhat ambiguous, we discern an intent to make it clear that the "unruly child" provision is not concerned with the conduct of the parent, but of the child.
The State relies heavily upon In re Interest of K.S., 216 Neb. 926, 346 N.W.2d 417 (1984), in which the Supreme Court of Nebraska held that a child could be found unruly as an habitual truant even if the child was withheld from school by his parents. We note, however, that the court's decision was based to some extent upon the fact that the Nebraska compulsory attendance law has been construed to apply to the child as well as the parent:
"The plain meaning of the statute gives no support to the position of the parents in this case. The dictionary defines *385 `truant' as being `a pupil who stays away from school without permission.' Webster's New Universal Unabridged Dictionary 1961 (2d ed. 1983). A child is no less truant if permission were obtained from one without the authority to grant permission. Under Nebraska compulsory attendance law only school authorities have the authority to grant permission to be absent. The fact that the parent grants permission cannot change the meaning of the act. Section 79-201 specifically provides that the compulsory attendance law is violated by a child who does not attend in accordance therewith `except when excused by school authorities.' There is no allegation nor evidence in this case that the child has been excused by school authorities, and, quite to the contrary, the evidence is that the child was not excused by authorities." In re Interest of K.S., supra, 216 Neb. at 929, 346 N.W.2d at 419 [Emphasis added.]
North Dakota has no similar provision regarding violation of the compulsory attendance statute by the child unless excused by school authorities; only theparents can be charged with a violation of the statute. See § 15-34.1-01, N.D.C.C. ["Every parent... shall send or take such child to a public school ...]; see also State v. Turner, 98 Wash.2d 731, 658 P.2d 658 (1983) [compulsory attendance law applicable only to parents, not children]. We further note that Nebraska has not adopted the Uniform Juvenile Court Act. Because our statutory scheme varies significantly from Nebraska's, we believe that K.S. is distinguishable and we decline to follow it.[2]
The State also relies upon our decision in In the Interest of E.B., 287 N.W.2d 462 (N.D.1980). In E.B., the child missed several days of school due to oversleeping. The child argued that oversleeping was not voluntary or willful conduct. We concluded that the conduct presented was obviously volitional, and indicated that absence without parental permission was the conduct meant to be proscribed by Section 27-20-02(10)[3]:
"If the child does not attend, and his or her parent did not give permission for the absencethe child's absence is marked unexcused. This is the exact conduct meant to be proscribed, whether the reason for the absence was oversleeping or something else." In the Interest of E.B., supra, 287 N.W.2d at 465.
Thus, our holding in E.B. implied that the focus of the "unruly child" provision is on the child, and that the conduct to be proscribed is absence from school without parental permission. This conclusion is supported by decisions from other jurisdictions defining truancy as absence from school in defiance of parental authority. See, e.g., Chicago Board of Education v. Kouba, 41 Ill.App.3d 858, 866, 354 N.E.2d 630, 636 (1976); Simmons v. State, 175 Ind.App. 333, 341, 371 N.E.2d 1316, 1322 (1978); In re Miller, 12 A.D.2d 890, 209 N.Y.S.2d 964, 965 (1961); Matter of Price, 94 Misc.2d 345, 347, 404 N.Y.S.2d 821, 823 (Fam.Ct. 1978); Ossant v. Millard, 72 Misc.2d 384, 388, 339 N.Y.S.2d 163, 168 (Fam.Ct.1972); In re Marsh, 140 Pa.Super. 472, 475, 14 A.2d 368, 370 (1940); In re Alley, 174 Wis. 85, 90, 182 N.W. 360, 362 (1921).
Although the juvenile court act is replete with provisions to protect the confidentiality of proceedings and to remove stigma from those brought before the juvenile court, we must also be sensitive to the child's self-perception when involved with the court. There can be no doubt that labelling these children as "unruly" children, when the only "wrong" they have *386 committed is willful obedience to their parents' wishes, must be a particularly confusing and frightening experience for C.S. and A.S. We must guard against using our juvenile laws to "visit" the sins of the parent upon the child. In the Interest of A.D.F., 176 Ga.App. 5, 7-8, 335 S.E.2d 144, 146-147 (1985) (Beasley, J., dissenting); In re Marsh, supra, 140 Pa.Super. at 475, 14 A.2d at 370; In re Alley, supra, 174 Wis. at 90, 182 N.W. at 362. In this instance, the law has created a potential conflict between the parent and child. We must not allow innocent children to become caught up as pawns between the control of their parents and the authority of the school. See Ossant v. Millard, supra, 72 Misc.2d at 388, 339 N.Y.S.2d at 168.
In saying these things, we are not unmindful that if proceedings are brought under the deprived child provisions of the juvenile court act, or against the parents under the compulsory attendance law, the children, innocent as they are, will suffer. This is not to say either that such actions could be sustained under the facts of these cases but until the parents relent, or until the Legislature modifies the law to permit home schools of this nature, children will continue to suffer this ignominy and humiliation. State officials will be forced to continue to attempt to enforce the compulsory attendance laws, not for pleasure, but out of a sense of duty to enforce what they have sworn to uphold.
We conclude that a child may not be found to be unruly because of habitual truancy if the child is absent from school in compliance with the directives of the parents. Under the circumstances presented, the juvenile court erred in finding that C.S. and A.S. are unruly children. The court's order is reversed.[4]
VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.
NOTES
[1] We call counsels' attention to Section 27-20-56, N.D.C.C., which provides that in appeals from the juvenile court the name of the child "shall not appear on the record on appeal."
[2] We also note that the Supreme Court of Nebraska relied heavily upon an early New York case, DeLease v. Nolan, 185 A.D. 82, 172 N.Y.S. 552 (1918). It would appear, however, that De Lease has been impliedly overruled by In re Miller, 12 A.D.2d 890, 209 N.Y.S.2d 964 (1961) (a child absent from school with permission and knowledge of his parent is not truant).
[3] In 1980, when In the Interest of E.B. was decided, the definition of "unruly child" was codified at Section 27-20-02(4), N.D.C.C. The statute has subsequently been numerically rearranged, and the "unruly child" provision is now found in Section 27-20-02(10).
[4] Because we conclude that the trial court erred in finding that the children were unruly under the circumstances presented, we do not address the other issues raised by the children and their parents on appeal.