In the Matter of ALICE RICHARDS, Neglected Child under Sixteen Years of Age.

Children's Court, Chenango County, March 1, 1938.

C. *Vernon Stratton*, for the Board of Education, Central School District No. 1, Oxford, N. Y.

*E. Florence Klose*, in person.

BROWN, J. The truant officer of Central School District No. 1, Oxford, N. Y., the petitioner in this proceeding, has filed a petition with this court in which it is alleged that Alice Richards, a child eight years of age, is a neglected child, as she is unlawfully kept out of school. The child resides with her mother, who has a divorce from a former husband and has remarried, her name now being E. Florence Klose. The family resides in the town of Smithville, Chenango county, and is within the central school district mentioned above.

At the hearing in the proceeding the petitioner testified that the child was not nor had she been in school during the past fall and that the mother refused to send her to school. In answer to a question by Mrs. Klose, he admitted that, at the time of the mother's refusal, she told him she had purchased the daughter's books " and was anxious to have her go to school providing she could get there safely." The mother was sworn as a witness and gave the reasons why Alice had not attended school. It appears the family lives about six and one-half miles from the school and on a hill farm in a rather inaccessible location, especially in the fall, winter and spring months. The school bus transporting pupils from this outlying district to and from the school at Oxford, N. Y., receives the children at the home of Herman Adams at about eight

o'clock in the morning and arrives on the return trip about fifteen minutes after four o'clock in the afternoon. The Klose family lives about one and four-tenths miles from the Adams residence, the place of embarkation. The road leading from the Adams home toward the Klose home is graveled about four-tenths of a mile and is a very steep grade, leading into a deep ravine or gulley spanned by a bridge, and the remaining mile of the route by which the Klose home is reached is a dirt road. The highway along the one-mile stretch is unfenced and during part of the year cattle roam at large over it. During the freezing weather of the winter months, water from two springs runs across the highway at one point, causing an icy condition. The evidence shows that, on the day of the hearing, for a distance of about 300 feet at one place along the road, it was covered with " one glare of ice " with a deep gully on one side and a steep hill on the other, and to avoid crossing the ice on foot one has to travel through the woods and among rocks for a considerable distance. Difficulty was experienced by Mrs. Klose and her husband on the day in question in traveling over a portion of the one and four-tenths miles, it being necessary for them to take a circuitous route through the woods and consuming nearly two hours from the time of leaving the house until they reached the place of hearing, a distance of about fifteen miles. There is no dwelling house between the Klose home and the Adams dwelling, the school bus terminal. A person traveling from the Klose home to the Adams residence is not within view of the former almost immediately after leaving. The stepfather is a concrete finisher and carpenter by trade, and his work takes him away from home. Much of the time his employment has been several miles from home. He has an automobile he uses in traveling to and from his work. The family have no other means of conveyance. Mrs. Klose testified: " If we had another car or if Mr. Klose was working the place and wasn't working out, we'd take her back and forth, we'd be glad to."

Mrs. Klose's only reason for not sending the daughter to school is her solicitude for the latter's safety and health and her feeling that those would be imperiled if a child of her age attempts to travel the one and four-tenths miles during the winter months, through the cold and wet, and at times encountering zero weather, and plodding through the mud and slush of the late fall and early spring months so prevalent at those times of the year. The child had a year of kindergarten in Binghamton, and in 1936 she did not attend school, as Dr. Boname, of Oxford, issued a certificate in effect certifying that she was not strong enough to walk the distance required to take the bus and, in addition, carry on her school work. The mother testified that she " has been teaching her at home the best she could," and

further stated: " If I could have permission to teach her at home until things were a little different, I would hire someone to come into my home and take care of the work so I could devote regular hours to it and I'd be willing to go to the school and get a record of the work to take her in and have her examined frequently and see that she kept up."

From the evidence presented at the hearing it is apparent that the refusal to send the daughter to school was not prompted by any spirit of defiance or willfulness but rather from a conviction that it would not be safe or conducive to the child's health in view of the conditions under which she would be obliged to travel from the home in order to attend school.

So much for the facts presented by the record. Is Alice Richards a neglected child? That is the sole question this court is called on to determine.

The allegation of neglect in the petition is as follows: " That the said child is a neglected child, in that the said Alice Richards is unlawfully kept out of school, and has not attended school in violation of sections 621 and 627 of the Education Law, and subject to section 2, subdivision 4, clause c, of the Children's Court Act." Section 2 of the Children's Court Act gives the meaning of the term " neglected child " as the same is interpreted in that act. Among the conditions classified in the section as contributing to neglect is the following: " ' Neglected child ' means a child * * * (c) who is under unlawful or improper care, supervision, custody or restraint by any person, corporation, agency, association, institution, society or other organization or who is unlawfully kept out of school;" Subdivision B of section 621 of the Education Law provides: " B. In each school district of the State, the following minors shall attend upon full time day instruction: 1. Each minor from seven to sixteen years of age." Subdivision B of section 627 defines the duties of persons in parental relation and reads in part as follows: " Every person in parental relation to a minor included by the provisions of this article * * *. 2. Shall cause such minor to attend upon instruction as hereinbefore required." Section 641 defines the penalties imposed for a violation of the sections referred to. Before the amendment of 1932 it read in part as follows: " A violation of section six hundred and twenty-seven shall be a misdemeanor, punishable for the first offense by a fine not exceeding ten dollars, or ten days' imprisonment." It was amended in 1932 and now reads, in part: " Except as otherwise provided a violation of this article shall be punishable for the first offense by a fine not exceeding ten dollars, or ten days' imprisonment." Obviously, in the enactment of the compulsory provisions of the Education Law,

in subjecting a parent who did not cause a child to attend school to punishment by imprisonment, the Legislature must have intended that the refusal on the part of a parent would be willful and defiant and accompanied by an unlawful intent. From the evidence in this case no such intent is apparent.

The Children's Court Act was created under the authority given in section 18 of article 6 of the Constitution of this State to protect and promote the temporal and moral well being and safeguard the welfare of children under sixteen years of age. Whether a child is a " neglected child " within the meaning of the act is a question of fact. The failure of a child eight years of age to be in attendance at school during a part or even the whole school year might postpone the day of graduation but not retard a healthy mental growth. Neither would it imperil the welfare of the child, especially when she is receiving home instruction. To find as a fact, on the record in this case, that Alice Richards is a " neglected child " would, in my opinion, require the court to make a finding contrary to and against the weight of evidence and, therefore, the proceeding is dismissed.