Stanley Gartenstein, J.
In this neglect proceeding, this court is called upon to adjudicate a controversy arising out of the intransigence of opposing sides in which, as so often happens, two children are caught as pawns. Despite several efforts by the court to mediate this matter before, during and after the *401 trial, the parties insisted on keeping to the collision course they had charted.
Petitioner is the attendance officer of District 15, Local School District. Respondents are the parents of two girls, Judith, age eight, and Joan, age six. The petition alleges that the respondent parents have failed to provide the children with adequate education in accordance with the provisions of part I of article 65 of the Education Law in that both children have been continuously absent from school from November 11, 1971, and further that respondent parents have failed to register the girls at Public School 32, Kings County.
Although the nominal petitioner is the attendance officer of the district, the petitioner was represented by the office of the counsel to the Board of Education. The Corporation Counsel of the City of New York also appeared at the trial. The children were represented by the office of the law guardian. Respondents were represented by independent counsel. The hierarchy of the Bureau of Attendance was also present in the person of its Family Court supervisor. The District Superintendent, Dr. John Hansen, appeared under subpoena.
In view of the active and vigorous participation of these segments of the Board of Education “ establishment ”, the court will consider the controversy to be one between the respondent parents and Local School Board No. 15 which shall be deemed a party to this litigation in the discretion of the court and for the protection of the children who are wards of this court.
Briefly, the facts concerning which there appears to be no material dispute, show that the two girls had previously attended P. S. 32. The respondent parents live at 379 Main Street, which, by decision of the local board, falls within the jurisdiction of P. S. 32. Equidistant from their home, which is situated about one block from either school, is P. S, 58, into which the parents enrolled the girls, giving the erroneous address 325 Main Street. By the decision of the local board, 353 Main Street is the dividing line between the two schools. Thus, respondent parents found themselves some seven or eight houses within the lines set for P. S. 32.
The Superintendent for the District testified that it is within his discretion and that of the local board to allow a student falling within the jurisdiction of one school to attend another. He further testified that such exceptions were, in fact, made. It was further his testimony that these parents had been denied the. right to register the children at P. S. 58 since 1968 and that *402 Ms action was known to and approved by the local school board.
All parties conceded that a false address had, in fact, been given. While the court cannot and will not condone this trickery on the part of the parents, it cannot prejudice the right of the children to have this court act to protect their best interests.
Apparently, the false address became known to the local board and the children were summarily discharged from P. ¡3. 58 and the parents instructed to enroll them at P. S. 32. This occurred simultaneously with the commencement of the absence of the girls. Nevertheless, regardless of what reasons the local board gives for its actions, it appears from its own official letter received in evidence that on that very date, the retention of the girls at P. S. 58 was authorized in writing and that the address set forth in this writing was the true address and known to the school authorities. The letter follows:
“Dr. Mary Smith
330 Broad Street
Brooklyn, New York
Dear Dr. Smith:
This is to authorize the retention of the following named children at P. S. 58 effective November 18,1971:
Judith Poster (grade 3)
Joan Poster (grade 2)
Address: 379 Main Street
Brooklyn, New York Phone: None
Each of the above named children has been in attendance at P. S. 58 for the last few weeks. Prior to their admission to P. S. 58, they were students at Bonneview Elementary School, Reading, California.
Yours sincerely,
(signed) Dr. John Hansen
Community Superintendent
AJP:Ij
ee: Mr. Karl Rowe, Principal, P. S. 32”
For whatever reasons known only to the Superintendent and the local board, tMs written authorization was not followed and the girls, caught in the middle, were discharged from a school in which their retention was authorized in writing. The parents have refused to send the girls to P. S. 32, alleging that their personal safety is endangered thereby and the parents allege that they have educated the girls at home.
The petitioner testified that on a surprise visit on December 15,1971, he came to the home of the children and that they were, in fact, pursuing a discernible course of study at home.
Judith, age eight, was permitted to testify in the discretion of the court and without objection as was Joan, age six. Both *403 girls appeared to be extremely bright, alert, well dressed, clean, loved and cared for. The court especially noted Superintendent Hansen during their testimony nodding his own approval. His actual approval of the girls and their course of study speaks more eloquently than his spoken disapproval on the witness stand in which he mouthed many platitudes which negated his actual feeling.
Judith testified, when asked why she preferred to attend P. S. 58, that “ I don’t have to be afraid ” and “ I don’t have to hurry home before kids beat me up.” She further testified that she was beaten almost every day in front of P. S. 32. The testimony of Joan was of similar import and she related to the court an incident where her books had been ripped by boys in her class. While the girls are admittedly young, they obviously were fully aware of the nature and import of the proceedings and what was expected of them on the witness stand. They not only testified without objection but were not cross-examined nor was any rebuttal offered their testimony. As a matter of law, their testimony is accepted as conclusive on the facts elicited from them.
The court tested each of the girls in turn. Judith was found to have a mathematical ability above 3d grade (her class level) and to be on the 4th grade reading level. She testified that she studies with her mother until 6:30 p. m. and that she then does “ homework ” for the next day. Joan’s testimony was similar and she was found to read above hey grade level and to have a command of multiplication tables and 3d grade mathematics. In short, the mother has done an excellent job of teaching her daughters.
It is settled law that a parent need not avail himself of formal educational facilities for a child in order to satisfy the requirements of the law, it being sufficient that a systematic course of study be undertaken at home and that the parent render qualified quality instruction. (See People v. Turner, 277 App. Div. 317; Matter of Zorach v. Clauson, 303 N. Y. 161, affd. 343 U. S. 306.) This requirement has been more than satisfied.
Thus, on the law and facts, a dismissal of the petition is mandated. The parents have not only not neglected their children, but they are concerned, loving parents acting for the welfare of their children. The court cannot, however, ignore the fact that it is upon the horns of a dilemma. If the petition is to be dismissed, these two girls will remain excluded from a formal school environment, a situation which is unacceptable to all concerned.
*404 The court parenthetically is constrained to note the damage done on both sides of the controversy. On the part of the parents, the excellent education which they are giving their children is incomplete without an object lesson to the effect that there are orderly processes of law through which wrongs are remedied and which should be followed. It is sad that these lovely girls should learn at their tender age the machinations of confrontation politics. It is regrettable that the parents did not see fit to avail themselves of the remedies set forth in article 78 of the CPLR if they felt aggrieved. On the other hand, the actions of the Superintendent and the local board cannot be thought of other than as inflexible, short-sighted, bureaucratic and an unnecessary flexing of muscles to show these parents who was “boss”. One is sadly reminded of the reserve army officer who lost his commission because he failed to supply his zip code.
Somewhere in the midst of all these high-powered political issues, stand these two girls, six and eight, caught in a swirl they fail to understand.
The court, therefore, will take matters into its own hands and resolve this matter to the best interests of the children.
Subdivision 1 of section 3232 of the Education Law provides with reference to enforcement of compulsory attendance: “ in the city of New York family courts shall have exclusive original jurisdiction in such proceedings.”
The import of the statute is to vest in the Family Court a legislative exclusive mandate to effectuate the terms of article 65 of the Education Law and must be construed to contain such auxiliary powers as would be necessary to effectuate the legislative intent. In conjunction with this statute, section 255 of the Family Court Act must be considered, stating as it does:
“It is hereby made the duty of every county and municipal officer and employee to render such assistance and cooperation as shall be within his jurisdictional power to further the objects of this act.”
The purpose of this section is clearly delineated: “to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare.”
The court, in considering the Superintendent and the local board to be before it in all respects other than formal appearance, therefore looks to substance rather than form, and hereby orders Local Board 15, as well as the Superintendent who appeared before this court, to forthwith admit Judith and Joan to P. S. 58 and to report within 10 days after the date of the order to be entered hereon its compliance with this directive. *405 Upon failure to do so, respondents’ counsel is directed to institute contempt proceedings before this court.
Petition dismissed.