Lyman H. Smith, J.
This is-a proceeding brought under article 7 of the Family Court Act. Three separate petitions charge the identified respondent children, Lisa, age 13, Robyn, age 10, and Dana, age 7, as “ Person[s] in need of supervision” for continuous failure to attend school “ from September 6, 1972 ”, the petitions herein having been filed on September 29, 1972.
The nominal petitioner is attendance supervisor of Central School District No. 1, Towns of Milo et al. (commonly known as the Penn Yan Central School District). He has been represented by counsel to the Board of Education. In view of the participation herein by the various segments of the school authority, the court, in the exercise of its discretion, will consider the Board of Education as the petitioning party in interest of this litigation, for the protection of the children who are wards of this court.
The Law Guardian has moved to dismiss the petition for want of jurisdiction of the .court upon the grounds (1) that petitioner’s proof failed to establish that the respondents were persons in need of supervision as defined under subdivision (b) of section 712 of the Family Court Act, and (2) that the petitioner failed to either exhaust available administrative remedies or otherwise pursue appropriate statutory relief.
The background facts upon which the ultimate determination of the court must rest appear as follows:
During the 1971-72 school year, the respondent school children were transported to their respective schools at Penn Yan •and Dresden by school bus. The school bus picked them up at the door of the family home each morning and returned them to their home at the end of each day. However, that part of the route of the school bus over a town road fronting the respond *386 ents ’ residence and the consequent door-to-door transportation of the children was terminated by a resolution of the Board of Education on March 13, 1972. The termination of such transportation to and from respondents’ home followed a petition directed to the Board of Education by a group of parents whose children were transported over the same route. The petitioning parents had asked the Board of Education to eliminate that part of the school bus route fronting on the respondents’ residence on the ground of the latent hazard presented by an intervening railroad crossing. The school bus supervisor investigated the crossing and after receiving his report, the Board of Education discontinued that portion of the route contiguous to the respondents’ residence as above indicated. Shortly thereafter, the respondents’ parents requested that the Board of Education resume door-to-door transportation of their children. The School Board denied this application and directed the children to a newly designated bus stop some two tenths of a mile from their home and located westerly of the railroad crossing.
As a result of the action of the School Board in terminating the door-to-door school bus service, the respondents ’ parents refused to enroll the children at the commencement of the school sessions in September, 1972, and would not permit their attendance thereafter.
Parenthetically, it should be noted that upon receipt of the petitions herein this court directed a request to the Board of Education to resume the door-to-door transportation of the respondent children until such time as the issues herein could be thoroughly investigated, heard, tried and determined. This, the School Board has done by providing a small bus (or other automobile service) for the children from their home to the bus stop on the westerly side of the offending railroad crossing. This, of course, obviated the necessity of the larger school bus filled with children crossing the railroad tracks in order to reach the respondents ’ home.
Upon the initial hearing in this proceeding, the school bus supervisor testified that he had investigated the route and, in particular, the railroad crossing. He reported to the board that the crossing was indeed dangerous due to an extremely short line of sight in both directions at the point where the highway crossed the railroad tracks. He also testified that on other school bus routes within the school district, school buses crossed 258 railroad crossings on each school day during the 1971-72 school year, ;
*387 The hearings have also developed proof from reports of the family physician (Dr. R. E. Deuel) that two of the respondent children, Robyn and Dana, suffer from chronic asthma and that at least one (Dana) is treated on a regular basis for various allergies.
A report of the results of physical examinations of all of the children by a court-appointed pediatrician (Dr. George T. Bartlett) indicates that the children have “ completely normal physical findings at this time ”, although Dana and Lisa “ have been found to have definite allergic reactions ”. However, the court-appointed physician concluded that cortisone control of Dana’s allergy warranted transportation to and from the home. A report of previous physical examinations of the children by a school physician (filed in writing with this court) indicates that all of the children are in good health and that there is nothing to prevent their walking on foot from their home to the newly established bus stop on the westerly side of the railroad tracks, a distance of two tenths of a mile.
The foregoing brings into focus the jurisdictional issue raised by the Law Guardian’s dismissal motion and, additionally, raises the issue of whether or not the facts presented in these proceedings would sustain a finding that the respondent children are persons in need of supervision within the provisions of article 7 of the Family Court Act. It appears that the issues thus framed, particularly with reference to the availability of the typical “ pins ” petition as a device to deal with a parent-initiated boycott of the local school, are of first impression in our courts.
Although satisfied that the Family Court has jurisdiction to hear, try and determine “ school-skipper ” complaints (cf. People v. Anonymous, 44 Misc 2d 392 [1964]; People ex rel. Williams v. Shanker, 58 Misc 2d 147 [1968]) which seem to constitute the bulk of the “ pins ” petitions filed in Family Court, this court is compelled to conclude that under the circumstances of the instant case the use of the ‘ ‘ pins ’ ’ petition is singularly inappropriate.
Subdivision (b) of section 712 of the Family Court Act defines a person in need of supervision as follows: “ ‘ Person in need of supervision ’ means a male less than sixteen years of age and a female less than eighteen years of age who does not attend "chool in accord with the provisions of part one of article sixty-five of the education law or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority.” Section 3205 (subd. 1, par. a) of the Education Law provides that “ each minor from six to sixteen years of age shall attend upon full time instruction.” *388 Otherwise, for the purpose of making a determination under the statute the crucial words in subdivision (b) are “ incorrigible ”, “ ungovernable “ habitually disobedient ” and “ beyond the lawful control of parent or other lawful authority ”.
As noted above, the Compulsory Education Law (Education Law, art. 65, Part I) affirmatively compels a child’s school attendance between 6 and 16 years of age. Significantly, failure or refusal to attend school invokes criminal penalties of fines and imprisomhent for violation of the statute (Education Law, § 3233). Likewise, under the 1970 amendment of subdivision (b) of section 712 of the Family Court Act (L. 1970, ch. 906, eff. Sept. 1, 1970) the illegally absent pupil may now be treated (by the Family Court) as a “ person in need of supervision ” and is thereby subject to the usual dispositions in said court, including removal from the parental home and loss of liberty by institutional placement for periods of up to 18 months plus extensions. (Family Ct. Act, §§ 754, 756.)
Obviously, since section 3233 of the Education Law provides criminal sanctions for violations of the Compulsory Education Law and the Family Court Act permits civil sanctions (so-called) which may seriously affect the liberties of the respondent child (cf. Matter of Gault, 387 U. S. 1 [1967]; also, see, Matter of Gregory W., 19 N Y 2d 55 [1966]) the basic principles of the criminal law are relevant in dealing with “ illegal ” absentees. It is therefore, fundamental that the respondent (defendant) absentee pupil must be found to have a conscious underlying intent (animo remanendi) to violate the clear provisions of the Compulsory Education Law before such sanctions may be invoked. In a word, the child must be deemed a truant, i.e., absent by virtue of his own will and personal intent.
It follows that the necessary finding of the absentee pupil’s intent, before invoking subdivision (b) of section 712 of the Family Court Act, will not permit labeling as truant the pupil who is prevented by parental authority or for that matter, any other authority, from attending school.
Since subdivision (b) of section 712 of the Family Court Act also disjunctively categorizes a child “ in need of supervision ” as “ incorrigible ”, etc., i.e., “ a child incapable of being corrected ” (Ballentine’s Law Dictionary [3d ed.]) it is logical to conclude that, while the term “ incorrigible ” might under certain circumstances equate with truancy, nevertheless, it is apparent the statute contemplates that an “ incorrigible ”, “ ungovernable ”, “ habitually disobedient ” child is one who has committed acts wholly different from skipping school, or “ truancy ” *389 per se. In any event, there is no proof here the respondent children are “incorrigible”, “ ungovernable ”, “habitually disobedient ” or “ beyond the lawful control of parent or other lawful authority ”. Nor is there proof here that the respondent children consciously intended to violate the pertinent provisions of the Compulsory Education Law (Education Law, art. 65, §3205, subd. [1], par. [a]).
Thus, the petitioner’s proof upon the hearings herein fails to establish that any of the respondents are “ person[s] in need of supervision ’ ’ within the explicit and fair intendment of the statute (Family Ct. Act, § 712, subd. [b]).
It is conceded by the parties that the children are not absent from school by reason of their personal volition, nor are any of them incorrigible, ungovernable or disobedient. Indeed, these children have impressed the court as being especially bright, alert, well mannered, well dressed, clean, much loved and well cared for. Obviously they would prefer to attend school. Yet they are absent under the express direction of their parents, neither of whom is a respondent in this matter. It is abundantly clear that these fine children are caught up as pawns between the control of their parents and the authority of the school. Under such circumstances, it is abhorrent to the law that these respondent children be branded as willful violators of the Compulsory Education Law (Education Law, art. 65, Part I) or, as either “incorrigible ”, or “ habitually disobedient ”.
Therefore, on the law and the facts, the court is compelled to dismiss the petition. However, despite such ruling, the impasse between parental control and the school authority remains.
In the broadest sense, the fact that the children should continue to be excluded from a formal school environment would be violative of the compulsory education provisions of the Education Law. (Education Law, art. 65.) It must also be assumed that there is genuine desire on the part of both sides to see to it that these children receive all the educational advantages to which they are entitled.
Both under constitutional mandate (N. Y. Const., art. VI, § 13, subd. b) and statutory provision (Education Law, § 3232) the Family Court is obligated to direct a resolution of the existing controversies between the parents on the one hand and the school authority on the other hand. While there are various statutory remedies immediately available to both sides (which the court will briefly review herein) none will prove satisfactory unless based upon preponderantly credible facts which, in turn, will ultimately permit and substantially facilitate appropriate appel *390 late review. In this regard, there are, at this juncture, two areas of evidentiary conflict concerning (1) the physical facts, including measurements, grades and lines of sight distances, surrounding the offending railroad crossing, all of which the court deems necessary to any final determination that such crossing is, or is not, hazardous; and, (2) a resolution of the patent' ambiguities and conflicts set forth in the available medical reports, so that a fair and reasonable determination can be made as to whether or not these children may walk to and from the presently designated bus stop without danger to their health and well-being.
In the absence of arbitrary and capricious action (and there is no evidence of such) this court is unwilling to invade the administrative province of the Board of Education in making the findings of fact necessary to the determination of the controversy herein. (See Matter of Board of Educ. of Cent. School Dist. No. 2, Town of Oyster Bay v. Nyquist, 60 Misc 2d 967 [1969].) It is, therefore, ordered and directed that the Board of Education conduct such hearings, and cause such investigations to be made that will enable it to record the findings of fact thus obtained and upon which it may ultimately predicate its resolution. In other words, the court respectfully directs that the Board of Education review its action of March 13, 1972, in terminating school bus service to and from the respondents’ home.
Upon such review and final resolution, should the parents determine themselves to be aggrieved by the action of the Board of Education, they will have available to them either the remedies afforded by CPLTt article 78, or those available via appeal to the Commissioner of Education. (Education Law, §§ 310, 3625.)
In pursuing a resolution of the controversy herein both sides will, of course, bear in mind that section 1 of article XI of the New York State Constitution guarantees to the children of this State the right to public instruction. Cor relatively, the Compulsory Education Law of our State (Education Law, art. 65, § 3212, subd. 5, par. a) provides that “ [n]o person shall induce a minor to absent himself from attendance upon required instruction or harbor him while he is absent or aid or abet him in violating any provision of part one of this article.” (Cf. Matter of Maynard v. Shanker, 59 Misc 2d 55 [1969]; also, see, Matter of Walker v. Foster, 69 Misc 2d 400 [1972].)
Subdivision 1 of section 3232 of the Education Law provides with reference to enforcement of compulsory attendance that *391 “ courts of special sessions [and] magistrates’ courts sháll have concurrent jurisdiction with family courts to hear, try and determine charges of violation ” of the statute. As the court noted in Matter of Walker v. Foster (supra, p. 404) ‘ ‘ The import of the statute is to vest in the Family Court a legislative * * * mandate to effectuate the terms of article 65 of the Education Law and must be construed to contain such auxiliary powers as would be necessary to effectuate the legislative intent. In conjunction with this statute, section 255 of the Family Court Act must be considered, stating as it does: ‘ It is hereby made the duty of every county and municipal officer and employee to render such assistance and cooperation as shall be within his jurisdictional power to further the objects of this act.’ ”
“ The purpose of this section is clearly delineated: to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare.’ ”
Similarly, the Family Court Act in its Child Protective Proceedings (art. 10, § 1012, subd. [f], par. [i]) defines a “ neglected child ” as one whose “ physical, mental or emotional condition has been impaired * * as a result of the failure of his parent * * * to exercise a minimum degree of care (A) in supplying the child with * * * education in accordance with the provisions of part one of article sixty-five of the education law ”.
It is to these latter sections, which in circumstances similar to those found here, that the Board of Education may wish to turn in the future.
The parents will, of course, bear in mind that, while the Board of Education is required to provide transportation for kindergarten and elementary pupils who live more than two miles from their school and, for higher graded students who live more than three miles from their school (Education Law, § 3621), there is nothing in the law that requires a school district ‘ ‘ to provide transportation for a pupil directly to and from his home” (Education Law, § 3621, subd. 3, par. b). Further, it should be noted, subdivision 4 of section 3621 of the Education Law states that the Board of Education ‘ may designate places for school buses to receive and discharge pupils * * * in order to provide for the protection of such pupils.”
In the interim and until the various remedies hereinabove discussed are exhausted, these children must attend school. To that end the court orders and directs that the temporary transportation heretofore provided by the Board of Education shall con *392 tinue until such time as the Board of Education has completed its investigation, hearings and review and offered its resolution of the problems surrounding the transportation of these children to their respective schools.
Nothing herein contained shall be deemed to prevent a further application to this court upon good -cause shown and not inconsistent with the findings of fact and law herein set forth.