Stanley G-abtenstein, J.
In 1973, the Office for Children’s Services of the Judicial Conference issued a report entitled Juvenile Injustice which documented the paucity of services available to juveniles under the auspices of this court. Decrying the callousness of public and private agencies, it concluded that failure to move ahead vis-a-vis .solutions to these problems was due to: “ the fragmented and compartmentalized delivery of service systems that allow each department and agency to say ‘let someone else provide for the child ’ ” (p. 71).
This survey, its conclusions and the statistical data underlying them were cited by the undersigned in Matter of Carlos P. (78 Misc 2d 851) in which it was pointed out that the amended section 255 of the Family 'Court Act giving this court the power to order “ any state, county or municipal officer and employee *244 to render such assistance and cooperation as shall be within his legal authority, as may be required, to further the objects of this act ’ ’, was enacted as a partial legislative response to this unsatisfactory situation.
In its decision in Carlos P., the court chastized various public agencies for repeatedly taking the legal stance that this statute has no application to them while, at the same time, refusing to take appellate proceedings when courts held otherwise so that they, and the litigants, and the courts themselves, would have the benefit of higher judicial .construction of this vital statute. The court then invited the agency ¡therein (in that instance, the board of education) to file an appeal toward this end.
In the within neglect proceeding, the court is conducting a dispositional hearing subsequent to a finding that the respondent mother neglected her children. Reports to the court indicate that the mother is now fully capable of caring for her children once they are returned to her by the Commissioner of Social Services to whose care they have been temporarily remanded. The children however, cannot he released to the mother because she has no adequate living arrangements. The policy of the New Yiork City Housing Authority (hereinafter referred to as Authority) which is in a position to alleviate this situation, is that arrangements for living accommodations cannot be finalized unless and until the mother has her children physically in her possession; and that respondent will then have to place her name on a list and wait, while her children languish in a temporary shelter, before housing accommodations are furnished to her.
To short-circuit this situation, the court has been requested to order the Authority to provide housing adequate for the respondent mother and children. Upon receiving this request, the court adjourned the dispositional hearing to enable respondent’s attorney to join the Authority as a party. In furtherance of this plan, a subpoena was served upon the agency by counsel. The Authority appeared on the adjourned date to argue against the court’s assuming jurisdiction. During this argument, referring to its decision in Carlos P., the court reiterated its disappointment in the negative response of agencies to orders under section 255 and in their failure to appeal as invited by the court in Carlos P. Simultaneously, it refused to assume jurisdiction over the Authority on the strength of the subpoena alone, and adjourned proceedings for proper application under CPLR 1003 to add it as a party. An order to show cause seeking this relief under CPLR 1003 was then prepared and signed. *245 The Authority again appeared and not only opposed the relief sought, but also made application to the undersigned to disqualify himself. The basis of this application was the novel theory that by inviting an appeal should the ruling be adverse to the Authority, the court purportedly expressed a predisposition to rule against it.
DISQUALIFICATION OF A JUDGE:
As pointed out in People v. Capuano (68 Misc 2d 481, 484 [citing Matter of Hancock, 91 N. Y. 284]) the nature of an interest required to disqualify a Judge under section 14 of the Judiciary Law, is one “ as a party or in a pecuniary or property right from which he might profit or lose ’ ’. While section 14 of the Judiciary Law setting forth statutory grounds for disqualification should be liberally construed to fulfill its obvious salutory purpose, new grounds not included in the statute may not be engrafted by the courts. (Citing Davis v. Seaward, 85 Misc. 210, affd. 171 Ap. Div. 963; Truesdell v. Winne, 44 Misc. 451.)
We turn now to the realm of individual disqualification for bias or other prejudice. As a matter of law, an application for transfer because of prejudice or bias, if entertained, is addressed to the sole discretion of the presiding Judge. As to such alleged bias “as distinguished from legal disqualification, the judge himself is the sole arbiter.” (People v. Patrick, 183 N. Y. 52, 54.)
The presence of bias may be the ground for appeal but only if, conceding its existence, it be shown to actually and unjustly affect the result. (32 N. Y. Jur., Judges, § 44, p. 396.)
In the final analysis, as the court stated in People v. McDonald (8 Misc 2d 50, 52): “ The question of when a judge should disqualify himself is generally one of conscience.”
The workings of an indivdual’s conscience and his private code of ethics are intensely personal experiences. It is the court’s belief that a Judge, or any person for that matter, whose individual conscience does not require infinitely more, or who does not judge himself and his own acts with greater harshness than the law or a higher court would, lives a personal tragedy.
A significant component of the court’s personal code stems from the biblical injunction ‘ ‘ Justice, justice shalt thou pursue ’ ’ (Deuteronomy, ch. 16, v. 20). Justice is an elusive quality which requires constant pursuit. The court believes that the jurist’s obligation is not limited to passive adjudication. He must also confront his mandate squ'arely; to see that justice *246 does in fact .go forth; and that the individuals before him struggling for recognition as human beings are not swallowed by red tape and bureaucracy. All the while he must apply the limit of his energies to insure that obedience to the court’s order will be forthcoming and its dignity above the litigation maintained. This duty must be performed with the courage to stand firm without succumbing to a normal tendency to back away from what may be unpleasant confrontation.
As pointed out by the Honorable Justine Wise Polieb in Matter of Natter (70 Misc 2d 791), the practice of a Judge disqualifying himself at the slightest provocation invites as much scorn as the reverse; that when satisfied that no bias or prejudice exists, he is under an obligation to preside even when challenged. Failure to do so would invite unethical “ Judge-shopping ’ ’ at the whim of either litigant.
In the final analysis, this challenge is based upon the court’s very definite point of view as to the legal import of existing cases as well as the determination that a swift firm judicial response will follow any 'disobedience to the court’s order if and when rendered. The notion that a Judge should disqualify himself for knowledge gained in the administration of his court; or for knowledge of unfortunate predispositions of certain agencies to push an elephant through the eye of a needle to avoid complying with valid court orders; or for a desire to see the law delineated by higher judicial authority, has no legal, ethical or moral basis. Presumably Judges are chosen for knowledge of the law and respect for judicial authority rather than for lack of it.
The application is denied.
joindeb:
Turning now to the application to join the Authority as a party, the court holds CPLB 1003 ‘1 appropriate ’ ’ to the Family Court pursuant to the criteria delineated in section 165 of the Family Court Act. As pointed out in Matter of Schwartz v. Schwartz (23 A D 2d 204), where a finding of “ appropriateness ’ ’ is made as to a section of the CPLB, it is to be used as a working tool and not as an impediment to the functioning of the Family Court.
Beading CPLB 1003, the court concludes that technicalities of the moving papers are irrelevant when viewed against the fact that the court could have joined the Authority as a party on its own motion if it chose.
*247 There is no doubt in the court’s mind that jurisdiction must be assumed over the Authority. It is given pause however by the language of section 156. of the Family Court Act which reads as follows: “ The provisions of the judiciary law relating to civil and criminal contemips apply to the family court, except that the family court may not treat a violation of any order of disposition by a party to a proceéding in the family court, as a civil or eriminál contempt, unless specifically empowered to do so under this act.” (Emphasis added.)
In view of the language of this section, will the. court’s prospective order making the Authority a “ party ” simultaneously emasculate it from enforcement by contempt if and when necessary?
Clearly, the prohibition against contempt proceedings orily applies to an “ order of disposition ”. Exámination of section 1052 of the Family Court Act indicates than an order in neglect proceedings is “dispositional” only when rendered, “At the conclusion of a dispositional hearing under this article ” (subd. .[a] j. The prospective order against the Authority if and when made, will in no event conclude the dispositional hearing. This must terminate with one of five possible orders specifically delineated by section 1052, none. of which resembles in any respect the order requested pursuant to section 255. It is accordingly the court’s opinion that addition;of the Authority as a party pursuant to CPLE 1003 will not remove its power to treat a violation of any prospective order which may be rendered pursuant to section 255 of the Family Court Act as a contempt punishable accordingly.
The motion is granted. This matter shall proceed to hearing with the New York City Housing Authority as a party on the adjourned date at which time the court shall consider proofs in accordance with criteria set forth in Usen v. Sipprell (41 A D 2d 261).