*643 OPINION OF THE COURT
Aaron B. Cohen, J.
In this matter a verified petition under article 10 of the Family Court Act was filed with the court by John J. Cleary, Assistant Director Protective Services, Services to Children, Nassau County Department of Social Services. Said petition alleged that Ernest Lash, Jr., was a neglected child in that his parents, Ernest and Barbara Lash, from on or about September 7, 1976, had not enrolled him in a school program and have detained him at home and they have refused to send the child to any type of public educational facility. In addition, the petition alleges that the parents have failed to co-operate with the Children’s Protective Services Agency in order to plan for the educational needs of the child.
The child involved in the proceeding is 12 years of age, having been born on June 10, 1965. He is a handicapped youngster with emotional problems and is unable to attend at a regular class setting. All of the school officials agree that Ernest needs special education and all were in agreement that this could best be given at the Rosemary Kennedy Center, a BOCES school for multiple handicapped children with emotional and/or neurological problems. Mrs. Lash, Ernest’s mother, was very opposed to this recommendation and refused to allow her son to attend this special school.
The matter came on to be heard and hearings lasted four days after which decision was reserved by the court.
These alleged acts of omission, if established, are in violation of section 1012 (subd [f], par [i], cl [A]) of the Family Court Act, which defines a neglected child as follows:
"(f) 'Neglected child’ means a child less than eighteen years of age
"(i) whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care
"(A) in supplying the child with adequate food, clothing, shelter, or education in accordance with the provisions of part one of article sixty-five of the education law”.
The applicable portions of article 65 of the New York State Education Law are as follows:
Section 3205 (subd 1, par a): "In each school district of the state, each minor from six to sixteen years of age shall attend upon full time instruction.”
*644 Subdivision 1 of section 3204: "Place of instruction. A minor required to attend upon instruction by the provisions of part one of this article may attend at a public school or elsewhere.”
Subdivision 2 of section 3204: "Quality and language of instruction; text-books. Instruction may be given only by a competent teacher * * * Instruction given to a minor elsewhere than at a public school shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides.”
Section 3204 (subd 3, par a, cl [1]): "The course of study for the first eight years of full time public day schools shall provide for instruction in at least the twelve common school branches of arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene, physical training, the history of New York state and science.”
Subdivision 2 of section 3210: "Attendance elsewhere than at a public school, a. Hours of attendance. If a minor included by the provisions of part one of this article attends upon instruction elsewhere than at a public school, he shall attend for at least as many hours, and within the hours specified therefor.”
A parent’s failure to provide education is one of the base? on which a child may be determined to be "neglected.” Nonetheless, it has been held that a determination of neglect must depend on its being made to appear that the parent is willful and defiant in not sending the child to school, and on resultant retarding of the child’s healthy mental condition. So, when a court found that a mother’s "only reason for not sending the daughter to school is her solicitude for the latter’s safety and health and her feeling that those would be imperiled if a child of her age attempts to travel the one and four-tenths miles during the winter months,” and that she had been giving the child home instruction, it refused to find the child "neglected” (Matter of Richards, 166 Misc 359, 361.) It is established that "parents have the right to educate their children elsewhere than in the public schools, provided the State’s minimum requirements are met” (Matter of Zorach v Clauson, 303 NY 161, 173).
A parent need not avail himself of formal education facilities for a child in order to satisfy the requirements of the law, it being sufficient that a systematic course of study be undertaken at home and that the parent render qualified quality *645 instruction. In People v Turner (277 App Div 317, 319), the court stated: "There is no provision in the Education Law which prohibits instruction of children at home * * * [t]he object of a compulsory educational law is to see that children are not left in ignorance, that from some source they will receive instruction that will fit them for their place in society.” (See, also, Matter of Walker v Foster, 69 Misc 2d 400.)
The court must now determine if Ernest Lash, Jr., is receiving an adequate education. It is the view of this court that he is. Ernest’s parents want to educate their child since he is educable even with his handicaps. They have, in fact, provided more education for their son than is required by State rules. When the parents and school district could not agree on a course of education acceptable to both, the parents contacted Adelphi University and from their learning disability center came in contact with two certified school teachers. Both teachers were certified to teach nursery, kindergarten, grades 1-6, and in the case of one teacher, she was also certified in special education. The second teacher was provisionally certified in special education and was to receive her permanent certificate in June of this year. Together they prepared a school curriculum for Ernest covering all the necessary subjects and started teaching him at home in November, 1976. They spent from 14 to 20 hours a week with Ernest, five days a week. Monday through Thursday they worked individually, but on Fridays they would work together. 8 NYCRR 200.4 (e) of the Regulations of the Commissioner of Education having to do with the education of handicapped children is entitled "Home and hospital instruction.” Clause (i) of paragraph (3) provides: "Instruction at the elementary level shall be for a minimum of five hours per week, preferably one hour per day.” It is uncontroverted that Ernest received three to four times more than what the rule provides. In February, 1977, the two teachers prepared a progress report which indicated that Ernest had made progress in all areas although he was still in need of help to overcome his handicaps. Both teachers testified that they did not believe the BOCES school was a proper setting for Ernest since the teacher-pupil ratio was 10 to 1, and that because of Ernest’s particular problems he could not properly participate and gain from such education. He needed a much smaller ratio and, as it developed, the actual ratio was 1 to 1, and on one day a week, it was actually two teachers for one student. They further testified that the equip *646 ment and materials supplied by Ernest’s parents were better than the equipment available at the BOCES school. The court was favorably impressed with the competency of these two teachers and their analyzation of Ernest’s problems and their educational treatment of them.
In the opinion of the court, the controversy that arose between the school district and the parents should have been avoided. The school authorities had apparently made up their mind and decided that if Ernest did not attend the BOCES school they were going to take the parents to court. They seem to have been using that threat as a weapon to have the parents accept their plan as final and the only one available. As it turned out, it was not the only available plan. On the other hand, the parents, and in particular the mother, was much less than co-operative with the school officials and tried to block all efforts to reach a mutual agreement by refusing to accept anything less than her son attending the regular public school in the district. The testimony during the course of the hearings proved that the regular public school could not educate Ernest because they could not and were not equipped to handle his problems. It appears to be the age old situation of an irresistible force meeting an immovable object.
It is the further opinion of the court that there was a technical violation of the Education Law on the part of the parents in not notifying the school authorities of the steps that they had taken to educate their child by providing tutors and in not supplying the authorities with a copy of the child’s curriculum. If this had been done the present case would never have come before the court. However, the court does not view this shortcoming on the part of the parents of sufficient import to declare them neglectful parents based on the affirmative action they did take to provide an education for their child.
It is the decision of this court that the petition herein is dismissed. However, both parents are advised that if they are going to continue to educate their child in their home, they must comply with the Education Law and the Rules and Regulations of the Commissioner of Education as such apply to home instruction by others than the school district in which they reside, and their failure to do so may result in court intervention and a different resolution of the question presented. They are also further advised that if they wish *647 their child to be educated by the local school district, cooperation and not obstruction should be the key word.