# In the Matter of ALBERT B., Respondent.

Second Department, March 2, 1981

APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (Lois M. Raff* of counsel), for appellant.

*William E. Hellerstein* and *Charles Schinitsky (Wendy Sue Lauring* of counsel), for respondent.

OPINION OF THE COURT

MANGANO, J.

The primary issue on this appeal is whether the notice requirements of CPL 710.30 are applicable to a Family Court delinquency proceeding (Family Ct Act, art 7) in which a petitioner intends to offer at the fact-finding hearing evidence of a prior statement by respondent to a public servant (CPL 710.30, subd 1, par [a]) or testimony by a

witness who has previously identified the respondent as the alleged delinquent in a confrontation arranged by police for the purpose of making such an identification. (See CPL 710.30, subd 1, par [b]; *People v Berkowitz*, 50 NY2d 333, 338, n 1; *People v Gissendanner*, 48 NY2d 543, 552.)

On October 4, 1979 a delinquency petition was filed in the Family Court, Kings County, alleging that respondent had committed acts, which, if committed by an adult, would have constituted the crimes of robbery in the first degree (Penal Law, § 160.15), attempted grand larceny in the first degree (Penal Law, §§ 110.00, 155.40), criminal possession of a weapon in the fourth degree (Penal Law, § 265.01), and criminal possession of stolen property in the third degree (Penal Law, § 165.40). These allegations arose out of four separate incidents that occurred on or about September 27, 1979, in which respondent allegedly robbed four individuals at knifepoint.

Respondent appeared in Family Court on October 4, 1979 and entered a denial of the allegations contained in the petition. At the time, petitioner served a notice on respondent's Law Guardian, which was labeled: "Notice Served Under Sec. 250.20 And 710.30 C.P.L.". In part, this notice, which was a preprinted form, stated that petitioner intended to offer at the fact-finding hearing testimony identifying respondent as a person who had committed the delinquent acts alleged, which testimony would be given by a witness who had previously identified him. It further stated that petitioner intended to offer evidence of statements made by respondent to a public servant. Blank portions of the notice that should have been completed with information specifying the type and date of the prior identification of respondent and the type, date and substance of respondent's statement were not completed by petitioner. No further notice was served upon respondent or his Law Guardian, except for an equally deficient oral notice given at the time of the probable cause hearing.

The Law Guardian moved by order to show cause, dated October 22, 1979, for an order precluding petitioner from introducing at the fact-finding hearing any evidence of the nature contemplated by CPL 710.30. By decision and order, dated November 28, 1979, the Family Court granted the

Law Guardian's motion and, in effect, denied petitioner's request to serve a late notice.

Article 7 of the Family Court Act does not provide for any notice analogous to that required by CPL 710.30 in criminal proceedings. Nor is such notice authorized by the general procedure provisions of subdivision (a) of section 165 of the Family Court Act which reads in relevant part: "Where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed by this act, the procedure shall be in accord with rules adopted by the administrative board of the judicial conference or, if none has been adopted, with the provisions of the civil practice act to the extent they are suitable to the proceeding involved."

Neither the rules of the administrative board nor the CPLR provide for any notice of the type found in CPL 710.30.

The threshold question, then, is whether, and to what extent, the Criminal Procedure Law can be applied to delinquency proceedings when nothing in the express language of the Family Court Act authorizes such an application.

In *Matter of Gregory W.* (19 NY2d 55, 62), the Court of Appeals held that in view of the possible loss of personal freedom delinquency proceedings "are at the very least quasi-criminal in nature." This holding was in accord with the major thrust of the case law developed by the United States Supreme Court in such cases as *Kent v United States* (383 US 541), *Matter of Gault* (387 US 1), and *Matter of Winship* (397 US 358). In each of these cases it was recognized that juvenile proceedings need not conform to all the requirements of a criminal trial, but they must comport with the demands of due process and fair treatment. *(Kent v United States, supra,* p 562.) The reason for this was aptly stated in the landmark decision in *Matter of Gault (supra,* at pp 27-28) : "[W]e confront the reality of that portion of the Juvenile Court process with which we deal * * * A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—

and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time * * * In view of this, it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase 'due process.' "[1]

The Supreme Court thus decided in *Gault (supra)* that due process and fair treatment required that juveniles be granted certain rights that are accorded adult criminal defendants, viz., (1) timely notice of charges, (2) the right to counsel, (3) the right to confront and cross-examine witnesses, and (4) the privilege against self incrimination.

Under the same due process analysis, the Supreme Court in *Matter of Winship (supra)* held that a juvenile delinquency petition must be sustained by the same quantum of proof as is required for conviction in an adult criminal proceeding.

In *Matter of Daniel D.* (27 NY2d 90), the Court of Appeals clearly adopted the due process and fair treatment standard enunciated by the United States Supreme Court in weighing the measure of process required in juvenile delinquency proceedings. It reiterated the *Kent v United States (supra*, p 93) holding that some, but not all, of the procedural requisites of a criminal trial are applicable to a juvenile proceeding. In this regard, it plainly stated that Family Court procedure is not governed by this State's criminal procedure statute, and, for that reason, specifically rejected a claim that a juvenile respondent was statutorily entitled to pretrial notice under section 813-f of the Code of Criminal Procedure (at p 95), from which CPL 710.30 is derived.

Nevertheless, statutory provisions of New York's adjective criminal law have been applied to Family Court proceedings. (See *Matter of Kenneth S.*, 52 AD2d 880;

---

1. Similarly, labeling Family Court "civil", which it is under article VI of the New York State Constitution and chapter 686 of the Laws of 1962 (cf. CPL 10.10), rather than "criminal", does not aid in the due process analysis.

*Matter of Julius S.*, 44 AD2d 826; *Matter of Steven D. G.*, 43 AD2d 585; *Matter of William L.*, 41 AD2d 674; *Matter of Arthur M.*, 34 AD2d 761.) In each of these cases, however, provisions of the Criminal Procedure Law or of its predecessor, the Code of Criminal Procedure, were extended to juveniles as a matter of constitutional necessity, and not as a matter of statutory right. (See *Matter of Steven B.*, 30 AD2d 442, 444.) A similar position was taken by the Court of Appeals in *Matter of James H.* (34 NY2d 814), when once again it confronted the issue of a juvenile respondent's right to pretrial notice as mandated for adults by CPL 710.30. Without abandoning its holding that a juvenile respondent has no statutory right to such notice *(Matter of Daniel D., supra*, at p 95), the Court of Appeals recognized that a juvenile must be accorded the equivalent of this right as a matter of due process and fair treatment. *(Matter of James H., supra*, at p 816.) Thus, even though the Criminal Procedure Law cannot be said to control Family Court delinquency proceedings, certain provisions of that statute have been, and must be, applied to such proceedings because they provide the very procedures necessary to protect the recognized constitutional rights of juvenile respondents.

We hold that fundamental fairness and due process require that a juvenile respondent be given notice prior to a fact-finding hearing of petitioner's intention to introduce evidence of respondent's prior statements to a public servant or identification testimony by a witness who has previously identified respondent. (See *People v Briggs*, 38 NY2d 319, 323; *Matter of James H., supra*, p 816.) This holding extends, in substance, the provisions of CPL 710.30 to Family Court juvenile proceedings.

We note, however, that the time requirements in delinquency proceedings (Family Ct Act, §§ 747, 748), which mandate expeditious fact-finding hearings, might defeat the purpose of extending CPL 710.30 to such proceedings if all of the provisions of 710.30 are deemed controlling. relevant part: "Such notice must be served within fifteen This is particularly true of subdivision 2 which reads in days after arraignment and before trial".

Since a fact-finding hearing, under article 7 of the Family Court Act, must normally commence not more than three days after the petition is filed if the juvenile respondent is in detention, and may, under certain circumstances, commence within 6 or 14 days (Family Ct Act, §§ 739, 747), mere compliance by petitioner with CPL 710.30 (subd 2) may not afford respondent adequate notice.

Wherefore, we hold that CPL 710.30 applies to juvenile delinquency proceedings, except that the notice required thereunder must be served upon respondent at the time a petition is filed or as soon thereafter as is reasonably possible, and before the fact-finding hearing. At no time, however, may petitioner serve such notice more than 15 days after the petition is filed unless petitioner has shown good cause as required by CPL 710.30 (subd 2).[2]

In the case at bar, petitioner had not, within 15 days of the filing of the instant petition, served a notice of intent to introduce evidence of the nature contemplated by CPL 710.30 (subd 1), except for a blank form notice, which is insufficient to fulfill due process and statutory requirements (see *People v Rivera*, 73 AD2d 528; cf. *People v Greer*, 42 NY2d 170, 176; *People v Nolan*, 75 AD2d 828, 829), and an equally insufficient oral notice. (Cf. *People v Iveys*, 67 AD2d 349, 352.) Furthermore, petitioner's excuses, that office procedure had been to serve notices in blank and that to cure the defects in those notices after the expiration of 15 days and before the fact-finding hearing would not have created any prejudice for respondent, were properly rejected by the Family Court. They did not constitute good cause for extending petitioner's time to serve a CPL 710.30 notice. (See *People v Spruill*, 47 NY2d 869; *People v Briggs*, 38 NY2d 319, 324, *supra.*)

Since petitioner failed to give sufficient and timely notice of his intent to introduce at the fact-finding hearing evidence of a nature contemplated by CPL 710.30, he was

---

2. The 15-day limitation in CPL 710.30 may be applicable in certain delinquency proceedings where the time requirements of sections 739 and 747 of the Family Court Act are dispensed with as a result of adjournments granted under section 748 of the Family Court Act or where the juvenile respondent is not in detention. In these cases fact-finding hearings could be held more than 15 days after petitions are filed.

properly precluded from offering such evidence at the hearing. Accordingly, the order appealed from is affirmed.

MOLLEN, P. J., HOPKINS and LAZER, JJ., concur.

Order affirmed, without costs or disbursements.

Leave to appeal is hereby granted.