OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
This is a proceeding initiated by the board of education wherein it is alleged that the respondent, Ian D., is a person in need of supervision in that he “has been absent from school 121 days from September 8, 1980 to May 5, 1981.” (Family Ct Act, § 712, subd [b].) At the fact-finding hearing, the Law Guardian conceded that Ian has been absent from school as stated in the petition. However, testifying in his own behalf, Ian maintained that he was unable to attend school because of constant abuse from other students who ridiculed him about his being poor and having to wear secondhand, inadequate clothing. The boy stated that his repeated pleas to school authorities for protection and assistance resulted in no meaningful action.
Subdivision (b) of section 712 of the Family Court Act provides, inter alia, that a person in need of supervision is a “male less than sixteen years of age *** who does not *19 attend school in accord with the provisions of part one of article sixty-five of the education law”.
The Corporation Counsel, appearing in support of the petition, argues that the defense offered by Ian is affirmative in nature, to be pleaded and proven by the respondent. It is true, of course, that the Civil Practice Law and Rules may apply to Family Court procedure in an appropriate case where the method of procedure is not specifically set forth in the Family Court Act (Family Ct Act, § 165, subd [a]). And, pursuant to CPLR 3018 (subd [b]), it may well be argued that Ian’s response to this petition should be established by him as an affirmative defense.
However, the court must not overlook the essential nature and consequences of a PINS proceeding. Thus, upon a finding that a child is a person in need of supervision, he may be removed from his home and placed pursuant to section 756 of the Family Court Act. This significant interference with the child’s freedom coupled with the stigma that attaches to the child renders the PINS proceeding at least quasi-criminal in nature and compels the conclusion that a PINS finding must be established by proof beyond a reasonable doubt. (Matter of Iris R., 33 NY2d 987.)
Thus, while subdivision (b) of section 744 of the Family Court Act establishes the requirement of proof beyond a reasonable doubt, such proof is essential as a matter of constitutional due process independent of the statute. For this reason, the court will consider the nature of Ian’s defense by analogy to the principles of criminal law and procedure. (See Matter of Albert B., 79 AD2d 251.)
Under the present Penal Law, all recognized defenses are categorized as either “defenses” or “affirmative defenses”. (Penal Law, § 25.00.) The prior Penal Law did not address the matter and so, pursuant to case law, the established defenses once raised by a defendant, had to be disproved by the prosecution beyond a reasonable doubt. (People v Kelly, 302 NY 512; People v Sandgren, 302 NY 331.)
In analyzing Ian’s response to the petition, it is obvious that the boy is claiming that his absence from school was *20 justified. And, although the defense of justification as set forth in the Penal Law normally involves the use of force against another, its scope extends to other types of defensive conduct. Thus subdivision 2 of section 35.05 of the Penal Law provides in part that conduct may be justified where it “is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.” Commenting on this provision, Arnold D. Hechtman, in McKinney’s Practice Commentaries, states: “Dubbed the ‘choice of evils’ doctrine (Model" Penal Code § 3.02), this principle is designed to cover very unusual situations in which some compelling circumstance or ‘emergency’ warrants deviation from the general rule that transgression of the criminal law will not be tolerated.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 35.05, p 83.)
Under subdivision 1 of section 3208 of the Education Law, a child is required to attend school only if in proper mental and physical condition. Moreover, pursuant to subdivision 2 of the same section^ a child whose mental or physical condition is such that school attendance would endanger himself or others is not permitted to attend. It follows that the mandates of the statute are not impaired by sustaining a child’s refusal to attend school if such attendance poses an imminent risk to his physical or emotional well-being. Moreover, where school authorities fail to take appropriate action to protect a child from daily exposure to physical or emotional harm, the actions of those authorities are subject to judicial review. (Matter of Oliver v Donovan, 32 AD2d 1036.)
The defense offered by Ian is legally proper and is substantially similar to the defense of justification in the Penal Law. Therefore, without making a blanket application of section 35.05 of the Penal Law to this PINS proceeding, the court does apply the nature of the defense therein *21 contained to the response interposed by Ian to this petition. Accordingly, the court now holds that the testimony of Ian in explanation of his nonattendance in school is a legally sufficient defense that must be disproven by the petitioner beyond a reasonable doubt.
In this regard, the court notes the decision of the Family Court, Suffolk County, in Matter of Baum (86 Misc 2d 409, affd 61 AD2d 123). Baum (supra) was a proceeding under article 10 of the Family Court Act wherein the respondent mother was alleged to have neglected her daughter by failing to send her to school without just cause. (Family Ct Act, § 1012, subd [f], par [i], cl [A].) By way of defense, the mother alleged that her child had been subjected to racist remarks by a teacher and that no meaningful effort was made by the school system to prevent a repetition. Judge Abrams considered the defense to be affirmative in nature, requiring the respondent mother to establish it by a fair preponderance of the credible evidence. (86 Misc 2d 409, 414, supra.) The Appellate Division, in affirming the Family Court, did not address the specific question of whether the defense offered was affirmative. Nor is it at all clear that this issue was raised on appeal.
In any event, Baum (supra) is not inconsistent with the holding made in this case. Child protective proceedings pursuant to article 10 of the Family Court Act are clearly civil in nature. Since their purpose is to adjudicate the status of the child and not to punish the parents, findings of neglect need only be based on a fair preponderance of the credible evidence. (Family Ct Act, § 1046, subd [b]; Matter of Leif Z., 105 Misc 2d 973.) Thus, the civil nature of article 10 proceedings distinguishes the Baum (supra) case from the instant quasi-criminal PINS proceeding.
Having determined that the defense offered by Ian is legally proper, the court now turns to the question of whether it has been established. At the fact-finding hearing, young Ian was a particularly compelling witness. A small boy for his age, Ian was described by the attendance teacher as a “loveable, likeable, bright child with high potential.” His demeanor on the witness stand confirmed this description.
*22 Dressed in palpably poor clothing, the child tried his best to forestall tears as he described his ordeal in school. He testified that he was continually taunted about being poor. Led by an identified ringleader, children would gather in clusters to torment him. On one occasion, he was physically assaulted without provocation in the presence of his mother who came to walk him home.
Since Ian could not afford sneakers or gym trunks, the school arranged for him to receive secondhand articles. At the time, the boy was promised that no one would learn that these articles were not his own. However, the clothing provided Ian had another boy’s name on it which school officials crossed out with a magic marker. Predictably, word spread throughout the school about the source of Ian’s gym clothes resulting in increased taunts by the other students.
Ian explained his plight to school authorities, including the principal. Although he was promised that corrective action would be forthcoming, the record is silent as to what, if any, steps were taken by school authorities other than to place Ian in a “self-contained” class. No evidence was offered as to whether the offending students and their parents were approached by school authorities and, if not, why not.
The “self-contained” class was supposed to reduce Ian’s contact with other students during the school day. Specifically, it was a class of students whose physical handicaps made changing classes inappropriate. And so Ian, with no physical disabilities, was quarantined from social intercourse with his classmates by confining him in a class where he simply did not belong. Moreover, there is evidence in the record that his placement in this special class may have been to his academic detriment. Whatever the motives of school officials, it is obvious that their approach or nonapproach to Ian’s problems was not effective. And, to the mind of a little boy in distress and this court, this is the measure of its worth.
Ian resides with his mother who, until some time ago, was a recipient of public assistance. However, when she failed to keep an appointment for recertification, the family was removed from public assistance. Thus, there was *23 virtually no money coming into the household for the last few months. Incredibly, both Special Services for Children and school authorities were aware of the situation and did nothing. No explanation was offered as to how a child could be deprived of the essentials of life whatever the failings of the parent. No child protective proceeding was initiated under article 10 of the Family Court Act (Family Ct Act, §1012, subd [f]). In fact, the attendance teacher who testified at the hearing was unable to inform the court of the current status of Ian’s case with Special Services for Children.
Section 3209 of the Education Law provides as follows: “Public welfare officials, except as otherwise provided by law, shall furnish indigent children with suitable clothing, shoes, books, food and other necessaries to enable them to attend upon instruction as hereinbefore required by law.” Against the mandates of this statute, the action of the New York City Department of Social Services is inexplicable. The sad and sorry conclusion that must be reached in this case is glaringly evident. Agencies charged with providing for the needs of a child, failed miserably. In a society of summer homes, weekend junkets to the Caribbean, and the three-martini lunch, no one had any time for the naked, aching poverty of a little child. This court cannot help but wonder how many other little children like Ian, living in the greatest city in the world, suffer every day with no one to hear their plight.
During the course of his testimony, Ian broke down and cried as he described his heartache. He impressed this court as a sensitive, intelligent, co-operative little boy. As this court told him on the record, it is not he who ought to be ashamed. Rather, if anyone is to bear the stigma in this case, let it fall where it rightly belongs, on those who saw his tears and simply walked away.
The motion of the Law Guardian to dismiss the petition is granted. Moreover, at Ian’s request, an order will issue, pursuant"to section 255 of the Family Court Act, directing the board of education to transfer Ian to the school of his choice where, hopefully, he can begin anew, unencumbered by the reputation heaped upon him at his present school. Moreover, the Commissioner of Social Services is ordered *24 forthwith to provide Ian with suitable clothing both for school attendance and use at home. In addition, the commissioner is ordered to review the financial needs of Ian’s family and to take appropriate action to insure that adequate food, clothing, shelter, and other necessities of life are made available to them.
Finally, the court notes the representation by the attorney for the Commissioner of Social Services that he intends to file a neglect petition involving Ian against the boy’s mother. The court will act appropriately on that petition when it is filed.