OPINION OF THE COURT
John D. Capilli, J.
The petition before the court, sworn to on June 20, 1984 by Michael J. Sullivan as guidance counselor of Jerusalem Avenue Junior High School, North Bellmore, New York, alleges that Barbara M., born April 19, 1970, requires supervision and treatment pursuant to Family Court Act article 7. The petition states that Barbara is a "person who does not attend school, in accordance with the provisions of Part 1 of Article 65 of the Education Law, and who is beyond the lawful control of her lawful authority in that she, in the County of Nassau, since the beginning of the current school year on September 12, 1983 at Jerusalem Ave. Jr. High School, North Bellmore, New York, has not attended school in accordance with the provisions of § 3205 of the Education Law and has been absent a total of 74 full days and absent a total of 26 half days from *21 Jerusalem Avenue Jr. High School, where she is a registered student.”
After numerous adjournments, a hearing commenced on December 17, 1984. After 11 days of trial, the court reserved decision on August 20, 1985. The Deputy County Attorney, appointed by the court to present the petition, called Michael J. Sullivan, guidance counselor, and Richard Klesius, principal of Jerusalem Avenue Junior High, as witnesses. The respondent testified on her own behalf and called her mother, Carol Ann M., and Dr. Agnes Nagy, Barbara’s pediatrician since 1977, as witnesses. Documents received in evidence included Barbara’s attendance registration card for the 1983-1984 school year and 54 notes written by Carol Ann M. to Barbara’s school in reference to Barbara’s health and/or her reasons for being late or absent from school during the 1983-1984 school year. The Deputy County Attorney submitted a memorandum of law. Counsel for the respondent submitted a memorandum of law and a reply memorandum of law.
Upon review of the petition, the testimony offered at the hearing, the exhibits received in evidence, and counsel’s memoranda of law, the court makes the following findings of fact and conclusions of law:
By her own admission, the respondent was absent from school during the 1983-1984 school year for 74 full days and 26 half days. She contends, however, that her absence was due to physical illness. The testimony of the respondent, her mother, and her pediatrician established that during the 1983-1984 school year Barbara suffered from various ailments, including: upper respiratory infection, viral pneumonia, repeated ear and throat infections, strep throat and allergies, as well as a staph infection in her nose and a swollen face, causing her left eye to be swollen shut for almost a month. She had her tonsils and adenoids surgically removed. Barbara was treated by Dr. Nagy 11 times during the year and, upon referral for possible rheumatoid arthritis, was treated approximately once a month by a Dr. Cohen. She exhibited symptoms of joint tenderness, difficulty in movement, visual problems, and chronic fatigue. She has also shown symptoms of a persistent low grade fever. Dr. Nagy testified that there are indications that Barbara suffers from an immunological disorder. In addition, Barbara was treated by Dr. Goldman for a tempomandibular disorder, which causes her to suffer jaw pain.
*22 Barbara testified that she made every effort to attend school and was absent or late only when she was at a medical appointment or she felt ill. Dr. Nagy testified that, in her opinion, Barbara was not a malingerer. The testimony of the respondent, her mother, and Dr. Nagy was credible and consistent and the Deputy County Attorney failed to rebut the respondent’s contention that she failed to attend school because she was too ill to do so.
The court finds that the respondent, Barbara M., was absent from school during the 1983-1984 term for 74 full days and 26 half days and, further, finds that she did not attend school on these days because she was at her physicians’ offices for treatment or because she was ill and she remained away from school with the full consent and approval of her parent.
The position of the Deputy County Attorney is that Family Court Act § 712 (a) mandates that the Family Court make an affirmative finding that a respondent is a person in need of supervision, a "PINS”, solely upon proof of the respondent’s frequent absence from school. He argues that the court is without discretion to examine the underlying reasons for a child’s nonattendance and urges that any child who fails to regularly attend school must be adjudicated a person in need of supervision if the school district, in its discretion, files a "PINS” petition against the respondent and establishes that the child was frequently absent. The Deputy County Attorney states in his memorandum of law that failure to attend school regularly, pursuant to Education Law § 3205 (1) (a) is a "strict liability offense in the context of a TINS’ proceeding.” The Deputy County Attorney points out that in 1970 Family Court Act § 712 was amended and the definition of a person in need of supervision was changed from a child "who is an habitual truant” to a child "who does not attend school in accord with the provisions of part one of article sixty-five of the education law”. He urges that the term "habitual[ly] truant” had overtones of willful nonattendance (a child who is absent from school with the permission and knowledge of his parent is not truant [Matter of Miller, 12 AD2d 890; Reynolds v Board of Educ., 33 App Div 88]) and, by deleting the use of the term, the Legislature intended to delete the element of willfulness or intent from the definition of a person in need of supervision, thereby leaving "failure to attend school regularly” as the only element necessary to adjudicate a child to be a "PINS”.
The court can find no authority to support the Deputy *23 County Attorney’s position. Courts that have considered the issue subsequent to the 1970 statutory amendment of Family Court Act § 712 have held that a finding that a respondent is a "PINS”, based upon failure to regularly attend school, requires proof beyond a reasonable doubt that the child willfully and intentionally failed to attend school, in violation of the compulsory education laws of the State of New York. In Ossant v Millard (72 Misc 2d 384 [a case analogous to the recent parent boycott of the New York City schools over the "A.I.D.S.” controversy]), parents refused to send their children to school because of the discontinuance of door-to-door bus transportation. The court dismissed the "PINS” petition brought against the children on the grounds that the children were absent under the express direction of their parents and had no intent to violate the compulsory education law. (See also, Matter of Andrew R., 115 Misc 2d 937.) Further, regarding "PINS” proceedings founded on allegations other than nonattendance of school, courts have consistently held proof of intent requisite to the finding that a respondent is a person in need of supervision. (See, Matter of Price, 94 Misc 2d 345; Matter of John G., 89 AD2d 704; Matter of Reynaldo R., 73 Misc 2d 390.)
The issue in the proceeding herein is not, however, whether the respondent willfully intended not to attend school, but whether her absence from school was excusable and permissible or unlawful. Education Law § 3210 (2) (b) provides that "[a]bsence from required attendance shall be permitted only for causes allowed by the general rules and practices of the public schools.” Mr. Sullivan, Barbara’s guidance counselor, and Mr. Klesius, principal of her school, both testified that a death in the family, a medical appointment and illness are acceptable excuses for absence from school. Mr. Klesius testified that school policy requires telephone notification of absence from a parent, followed up by a written note from a doctor or parent. Barbara’s mother substantially complied with the required school procedure.
Clearly, the school has regulations and procedures to distinguish between legal and unlawful absence from school and will proceed to commence a "PINS” proceeding against a child only when the school perceives the lawfulness of the absence to be questionable. It is then the role of the Family Court to determine, beyond a reasonable doubt, whether or not the child’s absence from school was excusable pursuant to Education Law § 3210 (2) (b). This statutory provision in the Educa *24 tion Law, which provides for permissible absence from school, and the school rules and regulations, which define excusable absence, defeat the Deputy County Attorney’s argument that absence per se, without regard to the underlying cause for the absence, mandates a finding that the respondent is a person who failed to attend school, pursuant to the Education Law. (In accord, see, Terry UU, 52 AD2d 683; Matter of John R., 79 Misc 2d 339; Matter of Ian D., 109 Misc 2d 18, wherein the courts held that a child should be declared a "PINS” only upon requisite proof of substantial, unexcused absence from school.)
The testimony of the respondent, her mother, and her pediatrician clearly established that the respondent suffered extraordinary, numerous ailments during the 1983-1984 school term. The respondent remained away from school with the consent of her parent. The school district conceded that its rules provide that illness is a permissible excuse from attendance and the Deputy County Attorney failed to rebut respondent’s contention that she was absent due to illness.
The court finds that respondent’s absence from school was excusable. She was absent with the express permission of her parent. The issue of intent is relevant only to unexcusable absence and the court, therefore, need not consider the issue of intent. The petition is dismissed, with prejudice.
The court is concerned, however, that Barbara be educated to the maximum of her potential. The testimony of the guidance counselor indicated that Barbara received home tutoring for several school terms, but that she was not approved for this service for the 1983-1984 school term. Family Court Act § 1012 (f) (i) (A) defines a neglected child as a child
"whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * *
"in supplying the child with * * * education in accordance with the provisions of * * * the education law”. Pursuant to Family Court Act § 1034 (1), the court directs the Nassau County Department of Social Services to conduct a child protective investigation to determine whether Barbara M. is a neglected child, in that her parent failed to obtain home tutoring.